## PERRY LEE, et al., Appellants, v. Y. D. SEALS, et al., Respondents.*

In the Kansas City Court of Appeals, December 3, 1923.

1. **MORTGAGES: Chattel Mortgages: Notice: Unrecorded Instrument Modifying and Ratifying a Recorded Mortgage Held not to Give Either Actual or Constructive Notice.** An instrument which was not recorded, modifying and ratifying a recorded mortgage, *held* not to give either actual or constructive notice of matter contained therein which was not incorporated in the mortgage proper.

2. ———: ———: **Recording of Chattel Mortgage Held to Have Given Constructive Notice of its Existence.** Recording of a chattel mortgage on a crop of wheat to be sown *held* to have given constructive notice of its existence.

3. **LIEN: Implied Lien: Bailment: One Expending Money and Labor upon a Chattel, at Request of Owner, Thereby Enhancing the Value Thereof, Has an Implied Lien.** At common law, one who has lawful possession of a chattel upon which he has expended money, labor or skill, at request of its owner, thereby enhancing its value, has an implied lien for services, which is favored by the law and may retain the same as security for his debt.

4. ———: ———: **Threshing of Wheat, Enhancing Value Thereof, Established an Implied Lien for Services.** The threshing of wheat enhanced its value and there was thereby established an implied lien for services.

5. **MORTGAGES: Chattel Mortgages: Liens: Mortgagee of Crop Held not Entitled to Possession as Against Landowner Having Lien for Threshing and Expenses Incidental Thereto.** Holder of a chattel mortgage upon a half interest in a crop of wheat to be sown by mortgagor, upon land of another, *held* not to have right of possession until all the terms of the contract between mortgagor and landowner had been fulfilled, which included threshing and payment of expenses incidental thereto, for which liens had attached, as provided by section 6877, Revised Statutes 1919, giving landowner right to terminate the tenancy of mortgagor at any time for condition broken.

*Headnote 1. Chattel Mortgages, 11 C. J., Section 193 (1926 Anno); 2. Chattel Mortgages, 11 C. J., Section 229; 3. Bailments, 6 C. J., Section 79; 4. Agriculture, 2 C. J., Section 130; 5. Chattel Mortgages, 11 C. J., Section 398 (1926 Anno).

Appeal from Circuit Court of Chariton County.—*Hon. J. E. Montgomery*, Judge.

AFFIRMED.

*Fred & Gilbert Lamb* for appellants.

*Jno. D. Taylor* for respondents, Bentley & Bucksath.

*L. E. Merrill* for other respondents.

ARNOLD, J.—This is a suit to recover from defendants the proceeds of the sale of one-half of a crop of wheat.

The facts shown are that early in the year 1921, one Y. D. Seals agreed with one Y. N. Edwards that the former would sow to wheat certain lands belonging to the latter, consisting of 240 acres. The contract provided that Seals would sow, harvest, thresh and deliver to Edwards one-half the threshed grain, and would pay for threshing the entire crop. On or about August 8, 1921, and before the wheat was sown, Seals purchased from plaintiffs a tractor and on the following day issued his certain promissory note in the sum of $1000, signed by himself and wife, and as security therefor, executed a chattel mortgage in favor of plaintiffs covering said tractor and a half interest in the crop of wheat to be sown on the Edwards land. The note and chattel mortgage were made to Lee & Jones Implement Company, the note being due and payable September 1, 1922, with interest at eight per cent compounded annually.

On the 10th day of December following, Seals executed before a notary public a paper purporting to be a raitfication of the said chattel mortgage and a correction of the acreage sown to wheat on the Edwards land. As the terms of this paper (which was not recorded) will be hereinafter referred to, it is set out in full:

December 10, 1921.

This is to acknowledge chattel mortgage given Lee & Jones Implement Co., Salisbury, Mo., August 9, 1921. Correction on wheat sown. Do sell, assign, transfer and set over unto the said Lee & Jones Implement Co., or assigns the following described personal property, to-wit:

"I have sown about 145 acres of wheat on the land described in chattel mortgage given Lee & Jones Implement Co., August 9, 1921, my (½) one-half of 145 acres of wheat sown and in the shock, stack, bins or elevators.

"In witness whereof, I have hereunto set my hand this 12th day of December, A. D. 1921.

"Y. D. SEALS."

In the summer of 1922, and after the wheat had been harvested, Seals procured defendants Bentley and Bucksath, threshing machine operators, to thresh the entire crop, one-half of which is in controversy herein, for the price of eighteen cents per bushel. The threshing bill for the entire crop was $342. At the conclusion of the threshing and before the wheat was removed from the Edwards land, there was a conversation between Bucksath and Seals, wherein it was agreed that Seals would haul the wheat to the elevator and mill of defendants Miller & McAfee at Brunswick, Mo., and would leave with them a sufficient amount of the proceeds of the sale to pay for the threshing. Thereafter the wheat was delivered in accordance with this agreement and plaintiffs then demanded the total proceeds of the sale under their mortgage; Bucksath & Bentley asked for $342, and Miller & McAfee claimed $34.41 was due them for coal used in the threshing and as rental for sacks used in handling the wheat. On account of these various claims, Miller & McAfee refused to pay over the money to anyone. This suit was then instituted wherein Bucksath & Bentley, upon their application, were made parties defendant, and Miller & McAfee paid the money into court, less the amount of their own claim of $34.41. The cause was tried to the court without the

aid of a jury and resulted in awarding to Bucksath & Bentley the amount of their claim, and to Miller & McAfee the amount in their hands, viz., $34.41, and to plaintiffs the remainder.

Plaintiffs appeal and now charge (1) that the mortgage ''gave them an equitable lien on the wheat when it came into existence, and attached to the proceeds thereof.'' In support of this proposition, it is urged that the mortgage having been recorded prior to the threshing of the wheat, it was constructive notice to defendants. It is also urged that the Missouri statutes do not give Bentley and Bucksath a lien for the threshing, and that if such lien were established under the common law, it would not be superior to plaintiffs' mortgage. In other words, it is claimed by plaintiffs that the recorded mortgage established a prior lien over the bill for threshing and over the claim of Miller & McAfee for coal and rental of sacks.

Opposed to this view, defendants' position is that plaintiffs' mortgage, having been executed on August 9, 1921, and before the wheat was sown, gave only an equitable lien which was not valid nor binding as against third persons in the absence of actual notice; and, furthermore, that as the contract with Edwards required the sowing, harvesting, threshing, payment for the threshing and delivery of one-half the crop to Edwards, the tenant had no mortgageable interest in any part of the crop until these things had been performed.

In the solution of this question, reference may be had to the so-called ratification of the mortgage set out above, and especially to the clause following the modification of the terms of the mortgage as to acreage sown, to-wit, from 240 to 145 acres, i. e. ''my one-half of 145 acres of wheat sown and in shock, stack, bins or elevators.'' This language is not incorporated in the mortgage proper and as the ratifying instrument was not recorded, it must be held to have given defendants no notice either actual or constructive. This principle is ele-

mental and requires no citation of authorities. It must be held, also, that the recording of the mortgage proper gave constructive notice of its existence to defendants. This principle is not disputed by defendants.

It is also insisted by defendants that the lien of Bucksath & Bentley is a lien at common law for service and labor performed which enhanced the value of the property, and is therefore a prior lien. A common law lien has been defined as "the right to retain possession of personal property until some debt due on, or secured by such property shall be paid or satisfied." [25 Cyc. 661.] "Implied lien for services. It is a principle of the common law that every man who has lawful possession of a chattel upon which he has expended his money, labor, or skill, at the request of its owner, thereby enhancing its value, may detain it as security for his debt. This right extends to all such manufacturers, tradesmen, and laborers, as receive chattels for the purpose of repairing or otherwise improving their condition  Upon the same principle, or upon principles very similar to it, the law gives a lien to common carriers, innkeepers, warehousemen, and wharfingers. Such liens being consistent with the principles of natural equity, are favored by the law, which is construed liberally in such cases." [19 Am. & Eng. Encyc. of Law, p. 8.]

Defendants declare that even though the chattel mortgage in question be found to be valid and gave proper notice to all persons, this would not affect the lien of defendants, for the reasons (1) the mortgage could carry no greater interest than the mortgagor owned at the time, and under the mortgage and modification thereof his interest was only one-half of the crop charged with the expense of harvesting and threshing the entire crop, and (2) under the "confirmation of December 10th, Seals was permitted to elect to deliver in shock, stack, bins or elevators. He elected to deliver in an elevator and this implied authority to contract for the threshing and delivery to the elevator, thus em-

bracing both the charge for threshing and the coal and bags necessary therefor.

It cannot be disputed that the threshing of the wheat enhanced its value, and there was thereby established an implied lien for services, as defined by the authorities above quoted. We hold defendants' point 1 well taken, to the effect that the right of Seals to the wheat did not attach until all the conditions of his contract with Edwards had been fulfilled, and this included the threshing and the right to contract for expenses incidental thereto.

Up to this point it cannot be successfully contended that plaintiffs had any right to possession of the wheat under the terms of the mortgage and the so-called confirmation. Nor can it be denied that under the provisions of section 6877, Revised Statutes 1919, Edwards had the right to terminate the tenancy of Seals for condition broken, at any time. And it therefore follows that the mortgagees herein did not have right of possession until all the terms of the contract between Seals and Edwards had been fulfilled, and no interest of plaintiffs legally could attach until after the threshing and division of the crop were completed; and this did not occur until after the lien for threshing and expenses incidental thereto had attached.

For the reasons above stated, the judgment should be affirmed. It is so ordered. All concur.