FIRST NATIONAL BANK OF CORNING, ARKANSAS, RESPONDENT, v. R. W. JOHNSON ET AL, APPELLANTS.[*]

In the Springfield Court of Appeals. Opinion filed August 13, 1927.

*Corpus Juris-Cyc. References: Chattel Mortgages, 11CJ, p. 443, n. 71; p. 511, n. 82; p. 541, n. 57; p. 661, n. 14; Records, 34Cyc, p. 615, n. 20.

*Abington, Abington & Freer* for appellants.

*J. C. Sheppard* for respondent.

BRADLEY, J.—This is an action to determine the priority of chattel mortgage liens. The cause was submitted on an agreed statement of facts and the court found in favor of plaintiff and this appeal followed.

March 14, 1924, L. W. Guthrie gave his note to plaintiff bank for $388.29, due October 29, 1924. To secure this note Guthrie, on same date, gave to plaintiff a chattel mortgage on his half interest in forty acres of cotton to be thereafter planted on a certain described farm in Butler county. This mortgage was filed March 22, 1924. April 12, 1924, defendant R. W. Johnson gave a note to plaintiff bank for $255 due December 12, 1924. To secure this note Johnson, on same date, gave to plaintiff a chattel mortgage on his half interest in same cotton described in the Guthrie mortgage. The cotton was not planted when the Johnson mortgage was given. This last-mentioned mort-

gage was filed April 21, 1924. May 29, 1924, after the cotton was planted and growing, Johnson gave to defendant Lazalier another mortgage on a three-fourths interest in the cotton on the land described in the two previous mortgages. This mortgage was filed June 4, 1924.

The parties interested agreed that the cotton be gathered and the net proceeds deposited in defendant bank to be turned over to the rightful claimant. This was done and there was deposited in defendant bank the sum of $226.77. In addition to the amount deposited Johnson sold one load of the cotton and received therefor the sum of $38.20 and turned this sum over to defendant Lazalier. April 28, 1925, Guthrie assigned to plaintiff bank his interest, if any, in the fund deposited in defendant bank.

The controversy is between plaintiff bank and defendant Lazalier. Plaintiff bank relies on the two mortgages given to it prior to the time the cotton was planted and defendant Lazalier relies upon the mortgage given to him by Johnson after the cotton crop was planted and growing.

It is contended by defendant Lazalier that this is an action at law, but the pleadings will not support this contention. The answer of the defendant State Bank of Neelyville is clearly in the nature of a bill of interpleader, if not in fact and form such a bill. After stating the facts relative to its possession of the $226.77 on deposit with it defendant bank prayed relief as follows: ''Therefore, this answering defendant prays that it be allowed to bring said fund amounting to two hundred and twenty-six dollars and seventy-seven cents ($226.-77) into court, which this defendant hereby offers to do and that the plaintiff, the First National Bank, Corning, Arkansas, and the co-defendants, R. W. Johnson, and Ed. Lazalier be required to litigate and cause to be determined which is entitled to receive said amount and that upon payment of said fund into court, this answering defendant prays to be relieved and discharged of any and all liability to the plaintiff or its codefendants, and that it be discharged with its costs.''

The judgment rendered so far as concerns defendant bank was that upon payment into court by it of the $226.77 it be discharged from further liability. We think that the cause as finally determined by the pleadings was one for the equity side of the court, and that it was so considered by the learned trial court.

The trial court prepared and filed a written opinion. This opinion, we think, covered the ground thoroughly and we adopt it and in addition give some further consideration.

The opinion is as follows: ''We are asked to ascertain and determine the question of priority as between the liens created, or attempted to be created, by the three chattel mortgages.

"The two chattel mortgages held by plaintiff purported to create liens upon crops which had not been planted at the time of the execution, delivery and filing of said mortgages, while the mortgage held by defendant, Lazalier, was executed, delivered and filed after the crops referred to in the mortgages held by plaintiff had been planted and were growing and thus had actual existence.

"In a very few jurisdictions it seems to be the law that mortgages of crops not yet planted are void as to third parties. The vast majority of the cases, however, are opposed to this view. In some jurisdictions mortgages of future crops are specifically legalized by statute, and in jurisdictions that do not have such a statute, as in this State, the general rule is that in equity a mortgage on unplanted crops is enforceable and an equitable lien is thereby created.

"In Klebba v. Missouri Meerschaum Company et al., 257 S. W. (Mo. App.) 174, the court says: 'A mortgage on crops of corn to be thereafter planted creates an equitable lien when the corn begins to grow.'

"Swinney v. Gouty, 83 Mo. App. 549, was an action for conversion of a crop of corn. The plaintiff claimed to own the corn as assignee of a mortgagee in a mortgage executed before the corn was planted. The defendant, with notice of the mortgage, had bought the corn. The court says: 'Unquestionably a mortgage on a crop of corn to be thereafter planted has the effect of creating an equitable lien when the crop begins to grow.' The finding of the trial court for the plaintiff was affirmed. This principle of an equitable lien is also found in Rutherford v. Stewart, 79 Mo. 216, and Keating v. Hannenkamp, 100 Mo. 16, 13 S. W. 89.

"Therefore the determination of the question whether the record of the chattel mortgages on unplanted crops or the equivalent thereof, under our statute the filing of same, constitutes constructive notice as against Lazalier we think disposes of this case. In Swinney v. Gouty, supra, we find this language: 'There is substantial evidence that the defendant had notice of the mortgage.' It does not appear whether or not the mortgage was recorded. Again in the case of Rutherford v. Stewart, 79 Mo. 216, we find that the holder of the second mortgage, executed after the property came into existence, had actual notice of the prior chattel mortgage executed before the property came into existence. In neither of these cases nor in any Missouri case cited in the briefs filed herein or examined in our study of this case is the question of constructive notice discussed or clearly determined. Bispham's Principles of Equity, Seventh Edition, page 412, says: 'Where an instrument which is entitled to be recorded is duly executed and acknowledged and is recorded in the proper territorial limits such a registration is notice of the contents of the instrument and of all legal and equitable rights and titles created there-

by to any person claiming from or under the same grantor by virtue of any title which existed in him at the date of the duly recorded conveyance.'

''The plaintiff contends in the argument that under the agreed statement of facts there is no evidence to show whether Lazalier had actual notice or not, and that if he did have actual knowledge of the existence of plaintiff's mortgages he was bound thereby under the cases cited and his mortgage must yield priority, and that the burden of proving that he did not have actual notice and that he was an innocent purchaser without such actual notice is upon him, and the cases cited by plaintiff seem to support the proposition of law involved. However, we are not disposed to undertake an analysis of the cases cited upon the proposition, for, as we understand the facts herein and as same were presented in the trial and argument of the case, the defendant, Lazalier, did not have actual notice of the existence of the mortgages to the plaintiff when the mortgage to him was executed and delivered.

''In Lee et al. v. Seals et al., 215 Mo. App. 582, 256 S. W. 830, Seals early in 1921 agreed with the owner of a tract of land to sow wheat thereon. The contract provided that Seals was to sow, harvest, thresh and deliver to the landowner one-half of the threshed grain and pay for threshing the entire crop. In August, 1921, and before the wheat was sown, Seals executed a chattel mortgage to plaintiffs covering his one-half interest in said crop of wheat to be thereafter sown, to secure the payment of a note for $1000. In the summer of 1922, after the wheat had been harvested, two of the defendants (owners of a threshing machine) were employed by Seals to thresh the wheat, and thereafter they claimed a lien against the wheat for the threshing charges. A controversy arose as to one-half of the crop of wheat between plaintiffs as holders of the mortgage executed by Seals before the wheat was sown, and the defendants who were claiming a lien for the threshing. In the trial of the case one contention of the defendants was that plaintiffs' mortgage having been executed in August, 1921, and before the wheat was sown, gave only an equitable lien which was not valid or binding as against third persons in the absence of actual notice. The court disposed of that contention in this language: 'It must be held also that the recording of the mortgage gave constructive notice of its existence to defendants.'

''Our statute, section 2256, Revised Statutes 1919, in reference to filing chattel mortgages reads: 'No mortgage or deed of trust of personal property hereafter made shall be valid against any other person than the parties thereto unless possession of the mortgaged or trust property be delivered to and retained by the mortgagee or trustee or *cestui que trust* or unless the mortgage or deed of trust be

acknowledged or proved and recorded in the county in which the grantor or mortgagor resides in such manner as conveyance of land are by law directed to be acknowledged or proved and recorded, or unless the mortgage or deed of trust, or a copy thereof, shall be filed in the office of the recorder of deeds of the county where the mortgagor or grantor executing the same resides.' And it further provides, 'and such instrument when acknowledged and recorded or 'when the same or a copy thereof shall have been filed, as above provided, shall henceforth be notice of the contents thereof to all the world.'

"The statute does not require a filing of the mortgage to give validity as between the parties. Between the parties the instrument is valid though never filed. The requirement of the filing is to cut off rights of third parties.

"We think it will be conceded that the mortgages held by the plaintiff created valid equitable liens enforcible as between the parties. These mortgages were duly acknowledged and proved and were, we think, properly filed and came within the operation of the statute cited.

"If it be said that the lien of plaintiff's mortgages did not attach until the crops were planted and had come into existence, then at such time the mortgages were already filed and prior to any rights accruing to defendant, Lazalier. [Truss v. Harvey, 24 So. (Ala.) 927; Nolen v. Farrow, 33 So. (Ala.) 41.]

"We cannot hold that plaintiff's mortgages were nothing more than agreements for a lien of some undefined nature and thereby destroy a very common form of security.

"Therefore we find the issues for the plaintiff herein and that the mortgages held by the plaintiff take precedence and have priority over the mortgage held by defendant, Lazalier, he having had constructive notice thereof."

In 11 C. J. 443 it is said: "Where a mortgage is given on crops, the seeds to produce which have not been sown, it is held in some jurisdictions, in the absence of statutory provisions to the contrary, that the mortgage is void at law as being a mortgage on future property, although it may confer a lien on the crop, on its coming into existence, which a court of equity will enforce against persons other than bona-fide purchasers without notice; but in most jurisdictions such mortgages are upheld either by force of express legislative enactment, or on the theory that the crop has a potential existence sufficient to give the mortgage validity."

The interested may find in the Corpus Juris notes authority *pro* and *contra* on the proposition that constructive notice of a mortgage on unplanted crops is sufficient to protect the mortgagee as against subsequent purchasers, mortgagees and creditors without actual no-

tice. The general rule seems to be that in those jurisdictions without validating statutes a mortgage on unplanted crops is void at law, but valid in equity and that record notice is sufficient to protect the mortgagee when he is seeking to establish his lien in a court of equity. It was so held in Apperson v. Moore, 30 Ark. 56, 21 Am. R. 170, and this ruling was prior to the Arkansas Act of February 11, 1875, making valid mortgages on unplanted crops. [See Kirby & Castle's Arkansas Digest (1916), sec. 6407.] Prior to the validating statute the Supreme Court of Arkansas held that such mortgages could not be enforced in actions at law. [See Apperson v. Moore, supra, and Tomlinson v. Greenfield, 31 Ark. 557.] In L. R. A. 1917C., page 11, will be found a somewhat exhaustive note on the validity of mortgages on unplanted crops. To attempt to analyze the cases cited in the note would extend this opinion beyond reasonable limits, hence we merely refer to the note so that the interested may examine if desired.

We have no statute validating mortgages on unplanted crops, but our courts have uniformly and from an early date recognized the equities attaching to such mortgages. If such mortgage is given in contemplation of planting and cultivating the crops within the crop season of the year the mortgage is given our courts have uniformly recognized that the mortgagee has an equitable lien upon the crop when it comes into existence, and if such mortgage is duly filed or recorded in accordance with our recording laws we rule that the constructive notice given by the record is sufficient to protect the mortgagee as against subsequent purchasers, creditors or mortgagees in an action in equity to enforce the equitable lien created by such mortgage.

The judgment below should be affirmed and it is so ordered. *Cox, P. J.*, and *Bailey, J.*, concur.