**Gerald V. FISHER and Doris L. Kim, Respondents,**

v.

**Alfred L. FISHER and Kathleen S. Fisher, Appellants.**

**No. WD 47560.**

Missouri Court of Appeals, Western District.

April 19, 1994.

Stephen James Briggs, St. Joseph, for appellants.

Robert B. Paden, Maysville, for respondents.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

KENNEDY, Presiding Judge.

Defendants/appellants, Alfred L. Fisher and his wife, Kathleen Fisher, ("the Fishers") were enjoined by the judgment of the trial court to remove their mobile home from what was deemed by the court to be a violation of a restrictive covenant, in that it was not "permanently fixed to a permanent foundation." The mobile home was located on a plot of ground which was subject to the following restrictive covenant:

> No mobile home shall be maintained on said tract with the exception of those which are permanently fixed to a permanent foundation.

Plaintiffs/respondents ("plaintiffs") were adjoining landowners, who were also the half-brother and half-sister of appellant Alfred L. Fisher.

The Fishers acquired the property, on which they later placed the mobile home, in January of 1990. Plaintiffs had only a remainder interest in the adjoining land at that time; they succeeded to the fee title after their mother's death on December 11, 1991.

The evidence with respect to the foundation of the mobile home, and the manner in which the mobile home was attached thereto, was as follows:

In May, 1990, the Fishers purchased this mobile home, which was delivered to the property and set where a house had previously been situated, but which had burned to the ground. The mobile home was set on eight pillars of concrete blocks, one pillar under each corner of the mobile home and two more evenly spaced at 15–foot intervals under either side. The concrete blocks rest on footings of rolled gravel and limestone rock. The pillars are hidden from the view of passersby by a skirt of plastic sheeting, with bales of hay placed around the outside. The mobile home is further secured by "eight anchors with strap tie downs on them, ratchet tie downs." The anchors are screwed into the ground about four feet.

The wheels and axles were removed from the mobile home when it was placed on the property, although the ball hitch was left on it. The mobile home is permanently connected to a septic tank, a water well, and to electricity and propane gas outlets. All the utilities are underground. The Fishers added a front porch and a back porch to the mobile home. They are attached to the ground but not permanently, and are removable.

On this evidence, the trial court held that the mobile home was not "permanently fixed to a permanent foundation," and that it was therefore in violation of the restrictive covenant.

The Fishers argue on this appeal, as they argued in the trial court, that the concrete block pillars upon which the mobile home rested was a permanent foundation within the meaning of the restrictive covenant, and that the mobile home was permanently fixed thereto.

■ Our standard of review in this court-tried case is to sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Daniel v. Galloway,* 861 S.W.2d 759, 760 (Mo.App.1993), citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will review the law and the evidence with due regard given to the trial court's opportunity to judge the credibility of witnesses. *Daniel,* 861 S.W.2d at 760, citing Rule 73.01(c) and *Phillips v. Schwartz,* 607 S.W.2d 203, 206 (Mo.App.1980).

■ Without attempting any definition of "permanent foundation" or "permanently fixed," which would solve every case, we have concluded the evidence amply supports the trial court's finding that this structure does not come within those terms. Terms used in restrictive covenants should be accorded their plain, everyday or popular meaning. *Simcox v. Obertz,* 791 S.W.2d 440, 442 (Mo. App.1990). Concrete block pillars, spaced 15 feet apart, would not ordinarily be thought to have that solid, enduring character which one would expect of a "permanent foundation." Its lateral strength would be slight. The use of these pillars—easily and inexpensively installed, and easily and inexpensively removed—bespeaks a lack of permanent intent. The anchors and strap tie downs themselves recognize the insufficiency of the pillars as a foundation.

■ The Fishers argue that plaintiffs' laches disentitles them from the equitable relief of injunction. We find no error in the trial court's rejection of that contention.

The laches argument is based upon the fact plaintiffs observed the mobile home being placed upon the property in May, 1990, but made no protest on the basis of the restrictive covenant's requirement of a permanent foundation. Only 21 months later did plaintiffs notify the Fishers of their objection to the non-complying mobile home and demand compliance. When the Fishers failed to comply, plaintiffs instituted the

present suit to enjoin the Fishers' alleged violation.

■ To prevail under the doctrine of laches, the Fishers must show that (1) plaintiffs had knowledge of facts giving rise to their rights and (2) plaintiffs delayed assertion of those rights for an unreasonable period of time to the Fisher's detriment. *See Perez v. Missouri State Bd. of Registration for Healing Arts*, 803 S.W.2d 160, 166 (Mo.App.1991).

The restrictive covenants were matters of public record, and the Fishers took title subject to the restrictive covenants and were charged with knowledge of them. *Gibson v. Harl*, 857 S.W.2d 260, 276 (Mo.App.1993), citing *First Nat'l Bank v. Johnson*, 221 Mo. App. 31, 297 S.W. 724 (1927). There was evidence, also, that the Fishers had actual knowledge of the covenants before the mobile home was situated, for plaintiffs' attorney sent them a letter in which he enclosed a copy of them. The letter was sent February 5, 1990, shortly after the Fishers acquired title to their property and well before they purchased the mobile home in May, 1990. There is no evidence plaintiffs ever misled the Fishers to believe they were waiving compliance with the restrictive covenants, or that they would not insist upon compliance. The Fishers proceeded in the face of the restrictive covenants, and plaintiffs' failure to act more promptly does not disqualify plaintiffs from injunctive relief. Plaintiffs' failure to act promptly is of small significance; they had only a remainder interest in the adjoining property until their mother died December 11, 1991. They then moved reasonably expeditiously to secure the Fishers' compliance with the restrictive covenant.

■ The Fishers also complain of the trial court's award to plaintiffs of $2,000 attorney's fees. This award is reversed.

■■ Missouri courts have adopted the "American Rule" which provides that litigants bear the expense of their own attorney's fees. *Stephenson v. First Missouri Corp.*, 861 S.W.2d 651, 658 (Mo.App.1993), citing *County Court of Washington County v. Murphy*, 658 S.W.2d 14, 16 (Mo. banc 1983). Although generally not allowable as costs, attorney's fees may be recovered if the situation falls within one of the following categories: (1) Recovery pursuant to contract or provided by statute; (2) recovery as damages to a wronged party involved in collateral litigation; or (3) reimbursement ordered by a court of equity to balance benefits. *Stephenson*, 861 S.W.2d at 658, citing *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 341 (Mo.App.1991); *In re Kerr*, 547 S.W.2d 837, 841 (Mo.App.1977).

Plaintiffs contend they were properly awarded attorney's fees under this last exception because of the very unusual circumstances involved; "those being the blatant disregard by [the Fishers] of the restrictive covenant, in spite of legal, as well as actual, notice of the existence of the restriction before placing the mobile home on a non-permanent foundation on the tract." Plaintiffs maintain that the Fishers' behavior can be equated with the term "wantonness." *See* 42 Am.Jur.2d, *Injunctions* § 308 (1969). They argue that because of the unusual circumstances, the trial court properly awarded the $2,000 damages as and for attorney's fees for having to bring the lawsuit and conduct discovery, negotiation and the trial.

The term "very unusual circumstances," as employed in attorney's fee cases, has been interpreted to mean an unusual type of case or unusually complicated litigation. *Ohlendorf v. Feinstein*, 697 S.W.2d 553, 557 (Mo. App.1985); *Dugger v. Welp*, 646 S.W.2d 907, 909 (Mo.App.1983). This case did not involve complicated litigation. The entire trial lasted two hours and produced a transcript of only 61 pages. The issue is whether the circumstances, as plaintiffs contend and the trial court implicitly held, fall within the scope of "very unusual circumstances."

This lawsuit was not an unusual action for injunctive relief. *See Conley v. Rauschenbach*, 863 S.W.2d 617, 621 (Mo.App.1993); *Stephenson*, 861 S.W.2d at 658. We reverse the award of attorney's fees in the amount of $2,000.

We reverse the award of attorney's fees for another reason. Attorney's fees are special damages which must be specifically pleaded to be recovered. *Conley*, 863 S.W.2d at 620; *Washington Univ. v. Royal Crown*

*Bottling Co.,* 801 S.W.2d 458, 470 (Mo.App. 1990). Plaintiffs failed to request attorney's fees in their petition: They merely requested "costs for the disbursement of this action." Attorney's fees are generally not considered to be costs. *Id.* Since plaintiffs failed specifically to plead attorney's fees, they may not recover them. *Conley,* 863 S.W.2d at 620.

The grant of injunctive relief is affirmed and the award of attorney's fees is reversed.

All concur.