**In the Matter of Junior Lee MORRISON, an incapacitated and disabled person.**

No. 22135.

Missouri Court of Appeals,
Southern District,
Division Two.

March 1, 1999.

John E. Price, Timothy B. O'Reilly, Price, Fry & Robb, P.C., Springfield, for Appellant.

Randy R. Cowherd, Daniel P. Wade, Newberry, Haden, Cowherd, Bullock & Keck, L.L.C., Springfield, for Respondent.

Before SHRUM, P.J., GARRISON, C.J. and BARNEY, J.

PER CURIAM.

At the time of trial, Junior Lee Morrison ("Timmy") was a thirty-three year old mentally handicapped person with a mental age level of approximately five years, five

months. After a failed foster home placement, Timmy was placed in a group home, and then in a private residence administered through Brooke Care, Inc. ("Brooke Care") in Gainesville, Missouri as a part of the Community Integration Program. In this setting, Timmy resided with a roommate and a "care giver," and he was apparently able to move about in the Gainesville community.

On July 30, 1997, Evelyn Cantwell ("Guardian"), Timmy's guardian and conservator, moved Timmy from the Brooke Care residence home and placed him in Ozark Mountain Manor, a residential care facility in Forsyth, Missouri. This setting was apparently more restrictive than the one in Gainesville. It was this move that resulted in the instant litigation.

On August 4, 1997, Terry Gardner ("Gardner"), a person who apparently befriended Timmy in Gainesville, and Steven J. Harter ("Harter"), "representative of Brooke Care," filed a petition to prohibit the removal of Timmy from his residence in Gainesville. On August 25, 1997, Terri L. Gardner[1] filed a petition to remove Guardian as guardian and conservator of Timmy, and also a petition for her own appointment in that capacity. In response, Guardian filed an answer to the petition and a motion seeking attorney's fees and costs. John Bruffett ("Guardian Ad Litem"), an attorney, was appointed guardian ad litem for Timmy, and subsequently filed a motion to compel the joinder of Harter,[2] and a motion to require Harter to account for funds allegedly raised by him in a fund raiser for Timmy. Guardian Ad Litem subsequently filed a petition for allowance of his fees.

The probate division of the circuit court entered a judgment in which it found that Timmy's best interests were served by moving him to the more structured setting in Forsyth, Missouri; denied Gardner's petition seeking the removal of Guardian; denied Gardner's request to be appointed as Timmy's guardian; and entered judgment against Harter and Gardner in the amount of $5,060 for attorney's fees incurred by Guardian and $3,546 for Guardian Ad Litem's fees.

In response to the motion for accounting, the court entered a judgment against Harter for $1,000, representing the proceeds in connection with the fund raiser, which it found was held by employees of Brooke Care, and $382.50 for Guardian Ad Litem's fees.

Harter and Gardner (collectively referred to as "Appellants") raise three issues on this appeal. Specifically, they contend that the trial court erred in awarding attorney's fees for Guardian, awarding attorney's fees for Guardian Ad Litem, and entering a $1,000 judgment against Harter. We affirm in part, reverse in part, and reverse and remand in part.

The standard of our review of a court-tried case is as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. We are to consider the evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable inferences and disregarding all evidence to the contrary. *Estate of Bonner*, 954 S.W.2d 356, 360 (Mo.App. W.D. 1997). We will not weigh the evidence, and because the trial court has the superior ability to judge the witnesses' credibility, we will defer to its findings. *Id.*

■ In their first point, Appellants contend that the trial court erred in awarding Guardian her attorney's fees, arguing, *inter alia* that the "American Rule" concerning awards of attorney's fees applies under these facts, and the award is not supported by substantial evidence. They point out that although the trial court has broad discretion to award attorney's fees and its decision will not be overturned except for an abuse of discretion, this standard is based on the assumption that the court has authority to award the fees. *Consolidated Pub. Water*

1. We presume this is the same person as "Terry Gardner," one of the petitioners in the August 4, 1997, petition.

2. Harter and his wife owned the stock in Brooke Care.

*Supply v. Kreuter,* 929 S.W.2d 314, 316 (Mo. App. E.D.1996).

Missouri has adopted the "American Rule" which provides that litigants are to bear the expense of their own attorney's fees. *Fisher v. Fisher,* 874 S.W.2d 543, 546 (Mo. App. W.D.1994). Attorney's fees may be recovered, however, if the situation falls within one of the following categories: (1) recovery pursuant to contract or provided by statute; (2) recovery as damages to a wronged party involved in collateral litigation; or (3) reimbursement ordered by a court of equity to balance benefits.[3] *Id.* The equitable balancing of benefits by awarding attorney's fees occurs only if "very unusual circumstances" can be shown. *Osterberger v. Hites Constr. Co.,* 599 S.W.2d 221, 230 (Mo. App. E.D.1980). "Very unusual circumstances," as it relates to the reimbursement of attorney's fees, has been interpreted to mean an unusual type of case or unusually complicated litigation. *Fisher,* 874 S.W.2d at 546. "Balancing of benefits" under "very unusual circumstances" has been confined to very limited fact situations. *DCW Enterprises,* 953 S.W.2d at 132.

In this case, Appellants argue that there is neither a statutory authorization for the award, nor a contract for the payment of the attorney's fees. They likewise argue that none of the other exceptions to the "American Rule" apply. Appellants contend that they were merely attempting to prevent the removal of Timmy from the community where he had become accustomed and which was most beneficial to his well-being.

Guardian, on the other hand, argues that the judgment for attorney's fees is authorized to balance the equities of the parties because there was unusual circumstances presented in the action. She argues that Appellants were guilty of "misconduct and self-dealing," which qualifies as "unusual circumstances." By way of summary, she contends that Brooke Care (Harter's corporation) had a financial interest in securing the return of Timmy to its facility; that Gardner had no experience in acting as a guardian and did not have a grasp of Timmy's physical, medical, and psychological needs; and that the living conditions at the Brooke Care facility to which Appellants sought to return Timmy were deplorable. In support, Guardian cites *Temple Stephens Co. v. Westenhaver,* 776 S.W.2d 438, 442 (Mo.App. W.D.1989). That case, however, involved a declaratory judgment action and the court specifically noted that Rule 87.09, Missouri Rules of Civil Procedure, provided that in such actions the court can award costs as may be "equitable and just." There is no contention, however, that Rule 87.09 applies to the instant case.

Guardian also relies on *Feinberg v. Adolph K. Feinberg Hotel Trust,* 922 S.W.2d 21 (Mo. App. E.D.1996), which held that trustees who breach their fiduciary duties and engage in self-dealing can be ordered to pay the attorney's fees of trust beneficiaries who bring suit to remove the trustees and obtain a return of trust assets. Guardian points to a fund raiser held for the advertised purpose of raising money "to help bring Timmy back home." She contends that although Harter placed a "thank you" ad in the paper indicating that the event raised over $1,000, none of that money was furnished to Timmy's estate, but was instead used to help finance the suit to prevent her from moving Timmy and to remove her as his guardian. The record shows, however, that the motion for an accounting (in which entitlement to the proceeds of the fund raiser was litigated) was brought by Guardian Ad Litem, and his fees in doing so were adjudged against Harter. Guardian does not demonstrate how any issue involving those funds also provides a basis for an award of her attorney's fees.

Guardian fails to demonstrate that this case constitutes an unusual type of case, or unusually complicated litigation, in order to qualify under the "very unusual circumstances" exception to the "American Rule." For that reason alone, it is necessary that we reverse the portion of the judgment awarding Guardian her attorney's fees. In further

**3.** Another exception recognized in some declaratory judgment cases is that of "special circumstances." This exception is narrow and strictly applied. *DCW Enterprises v. Terre du Lac Ass'n,* 953 S.W.2d 127, 132 (Mo.App. E.D.1997); *Washington Univ. v. Royal Crown Bottling,* 801 S.W.2d 458, 468–69 (Mo.App. E.D.1990).

support of reversal of the award of Guardian's attorney's fees, however, is the fact that such an award is unsupported by substantial evidence. *See Estate of Zeppenfeld,* 593 S.W.2d 890, 894–95 (Mo.App. E.D.1979) (holding that a public administrator was not entitled to attorney's fees in a claim against the estate of a former guardian where the case was not one where attorney's fees were authorized and there was no evidence to support the award).

■ The evidence in this case was heard on November 7, 1997, and November 21, 1997. On November 7, Guardian's attorney filed a motion for attorney's fees and costs in which he recited that Guardian "has had to retain counsel and pay court expenses of over $300 in connection with actions brought by [Appellants]," and moved that all costs, including attorney's fees, be assessed against Appellants. No evidence of Guardian's attorney's fees was introduced at trial. On December 11, 1997, Guardian's attorney filed an itemized, but unverified, "Billing Statement" showing a balance due of $5,060. On December 23, 1997, the trial court entered judgment against Appellants in that amount.

■ The mere filing of a document does not put it into evidence. *Halupa v. Halupa,* 943 S.W.2d 272, 276 (Mo.App. E.D.1997). Here, the filing by Guardian's attorney of a fee statement after the close of evidence is insufficient, in and of itself, to provide an evidentiary basis for a judgment. While it is true that a judge is considered an expert on attorney's fees, an award of those fees must be supported by competent and substantial evidence. *In re Marriage of Powell,* 948 S.W.2d 153, 159 (Mo.App. S.D.1997). The Missouri Supreme Court has said, in a case where attorney's fees were awarded without a hearing, that when attorney's fees are in issue, the court should hear from the parties just as in other matters. *O'Brien v. B.L.C. Ins. Co.,* 768 S.W.2d 64, 71 (Mo. banc 1989). Therefore, we also hold that there is no substantial evidence in this case to support the award of Guardian's attorney's fees.

Guardian's claim for attorney's fees does not fall under any of the exceptions to the "American Rule" and there is no substantial evidence to support an award of those fees.

The portion of the judgment awarding Guardian her attorney's fees is reversed.

■ In their second point, Appellants contend that the trial court erred in entering a judgment against them in the amount of $3,546 for legal services provided by Guardian Ad Litem. In support, they argue that there was no evidence at trial concerning the extent or nature of Guardian Ad Litem's services. In fact, they point out that the "Petition For Allowance of Guardian Ad Litem Fees," which contained an unverified, itemized statement of services and expenses, was not filed until five days after the conclusion of the evidence.

■ Section 475.097.2, RSMo.1994, authorizes the appointment of a guardian ad litem for a ward upon the suggestion of a possible conflict of interest between the ward and his appointed guardian or conservator. Here, the appointment of a guardian ad litem was requested by Gardner after she filed the petition for the removal of Guardian, and after she and Harter filed the petition to prohibit the removal of Timmy from Gainesville (the location of the Brooke Care facility) on the theory that such move was not in his best interests. The purpose of a guardian ad litem is to protect the ward's interests. *State ex rel. Schwarz v. Ryan,* 754 S.W.2d 949, 951 (Mo.App. E.D.1988).

■ The duty of the court to appoint a guardian ad litem necessarily implies the obligation to pay and the power of the court to fix reasonable compensation. *In the Interest of C.J.E.,* 878 S.W.2d 845, 847 (Mo.App. W.D.1994). Often, as here, the guardian ad litem is an attorney. In such cases, the guardian ad litem may also act as counsel for the ward, in which event he is entitled to a reasonable fee for his services if those services are necessary. *St. Louis Union Trust Co. v. Conant,* 536 S.W.2d 789, 797 (Mo.App.St.L.1976).

Appellants do not dispute the trial court's authority to award fees, including attorney's fees, to Guardian Ad Litem, or contend that such fees should be restricted to those attrib-

utable to certain issues.[4] Their sole contention is that the judgment for Guardian Ad Litem's fees is not supported by substantial evidence.

Here, Guardian Ad Litem was appointed on the motion of Gardner, and she was ordered to deposit $500 with the clerk of the court "to pay or be applied toward [Guardian Ad Litem's] fee, costs and expenses incurred in this cause as Guardian Ad Litem." At the time evidence was presented on the issues, however, there was no pending motion by Guardian Ad Litem for the payment of his attorney's fees. It was not until later that Guardian Ad Litem's unverified bill for services was filed with the court. It is incumbent on a guardian ad litem to show the extent of necessary services and attorney's fees rendered in regard to matters for which the Appellants, or either of them, could properly be responsible. *See Reding v. Reding*, 836 S.W.2d 37, 41 (Mo.App. S.D. 1992). Such evidence is necessary so that the trial court's award may be based on evidence, and so that an appellate court may have a record to review in determining the propriety of the trial court's discretionary action. *Id.* As previously mentioned, the mere filing of a document does not put it into evidence. *Halupa*, 943 S.W.2d at 276. Lack of a notice, a hearing, and any evidence on this issue requires us to reverse the award of Guardian Ad Litem's fees. *See Daily v. Daily*, 912 S.W.2d 110, 114 (Mo.App. W.D. 1995); *Doll v. Doll*, 819 S.W.2d 739, 741 (Mo.App. E.D.1991). *See also O'Brien*, 768 S.W.2d at 71. The judgment for Guardian Ad Litem's fees in the amount of $3,546 is reversed and remanded to the trial court for an evidentiary hearing to determine the amount of fees that Guardian Ad Litem is appropriately entitled to, the identity of the persons who should be responsible for such fees, and the manner in which those fees should be apportioned among those responsible.

In their final point on appeal, Appellants contend that the trial court erred in entering a judgment in favor of Timmy's estate against Harter for $1,000. This judgment was responsive to the motion of Guardian Ad Litem to require an accounting from Harter relating to the proceeds of a fund-raising event. In his "Motion For Accounting," Guardian Ad Litem alleged that Harter conducted "fund raisers" and as a result had in his possession over $1,000 for the benefit of Timmy; that Harter had no legal authority to conduct fund raisers for Timmy; and that funds obtained from such fund raisers belonged to Timmy and should be delivered to his guardian and conservator.

As indicated earlier, a fund-raising event was held relating to Timmy. The notices for it said that it was for "Timmy's Pre–Homecoming" and "to help bring Timmy back home." There was evidence at trial that flyers for the fund raiser were prepared by employees of Brooke Care which included the telephone numbers for Brooke Care and some of its employees. Following the fund raiser, an ad appeared in the local newspaper thanking people who participated in the fund raiser, and saying that "[a]ll efforts combined helped to raise well over $1,000." Under the body of the ad appeared the words, "Thank you, Brooke Care, Steve Harter." The trial court held that Harter was responsible to Timmy's estate for the $1,000 raised at the fund raiser and entered a judgment against him in that amount.[5]

One of the contentions made by Appellants in this point is that the trial court "lacked equitable jurisdiction for an accounting." In support, they cite *Bossaler v. Red Arrow Corp.*, 897 S.W.2d 629, 630 (Mo.App. E.D. 1995), in which the court said that the following four elements are required to establish

---

4. The fees of Guardian Ad Litem include fees incurred in pursuing the claim for an accounting against Harter. Gardner was not a party to that claim. Additionally, there is apparently no issue concerning the authority of Guardian Ad Litem, as opposed to Guardian, to bring and pursue the claim for an accounting against Harter. *See State ex rel. Paden v. Carrel*, 597 S.W.2d 167, 173 (Mo.App. W.D.1979).

5. The court also entered judgment against Harter for the attorney's fees of Guardian Ad Litem in connection with that accounting in the amount of $382.50. No issue is raised on this appeal concerning that portion of the judgment.

equitable jurisdiction for an accounting: 1) the need for discovery, 2) the complicated nature of the accounts, 3) the existence of a fiduciary or trust relationship, and 4) the inadequacy of legal remedies. They also cite *Ballesteros v. Johnson*, 812 S.W.2d 217, 220 (Mo.App. E.D.1991), in which the court held that a trial court's determination of whether facts establish equitable jurisdiction will be overturned only for an abuse of discretion.

■ The trial court's exercise of equitable jurisdiction for an accounting in this case constituted an abuse of discretion. We are directed to no facts in the record from which the trial court could have found any of the four elements necessary for it to assume equitable jurisdiction for an accounting. Additionally, we note that an accounting action is to be tried in two phases: First, a determination of the right to an accounting, and second, an actual accounting if a right thereto was found to exist. *State ex rel. Rowlett v. Wilson*, 574 S.W.2d 376, 378 (Mo. banc 1978). Here, there was no bifurcated proceeding, and the trial court made no findings on the essential elements to determine that an accounting was authorized. The judgment entered against Harter for $1,000 on Guardian Ad Litem's "Motion For Accounting" is reversed.

The judgment for Guardian's attorney's fees is reversed; the judgment for Guardian Ad Litem's attorney's fees is reversed and remanded to the trial court for further proceedings consistent with this opinion; and the judgment against Harter for $1,000 is reversed. The judgments of the trial court are otherwise affirmed.