Robert A. RIDGWAY and Bonita M. Ridgway, Plaintiffs–Respondents,

v.

TTnT DEVELOPMENT CORP., et al., Defendants–Appellants.

No. 25359.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 20, 2004.

David L. Baylard, Union, MO, for Appellants.

Michael J. McKitrick, St. Louis, MO, for Respondents.

JEFFREY W. BATES, Judge.

Defendants TTnT Development Corp., Jerry Tuma, William Tillman and Jeffrey Tillman ("Developers") appeal from a judgment awarding Robert and Bonita Ridgway ("the Ridgways") $150,000 in damages and $103,393.98 in attorney fees on their claim for trespass to realty. Developers present three points on appeal. They contend that the trial court erred in the following respects: (1) using the wrong measure of damages in awarding the Ridgways actual damages of $50,000 as compensation for the trespass committed by Developers; (2) trebling the Ridgways' actual damage award pursuant to § 537.340; and (3) granting the Ridgways' request for attorney fees.[1] For the reasons stated below, we conclude that the trial court properly awarded the Ridgways $50,000 as actual damages for common law trespass, but the trial court erred when it trebled the Ridgways' damages and awarded them attorney fees. Accordingly, we affirm in part, reverse in part and remand the case to the trial court with directions to enter a judgment for the Ridgways and against Developers in the amount of $50,000, plus court costs.

## I. Facts and Procedural History

This case is on appeal to this Court for the second time. A detailed statement of the facts can be found in our prior opinion, *Ridgway v. TTnT Development Corp.*, 26 S.W.3d 428 (Mo.App.2000) ("*Ridgway I*"), and will not be repeated here. Instead, we will briefly summarize what took place in the first appeal and explain the limited purposes for which the case was remanded. Thereafter, we will recount only such additional facts as are relevant and neces-

sary to decide Developers' points in this second appeal.

### A. Ridgway I

The Ridgways' petition was pled in three counts. Count I alleged that the roadway being constructed by Developers exceeded the scope of a roadway easement granted by the Ridgways. The remedy sought in Count I was ejectment as to all portions of the roadway that constituted an encroachment on the Ridgways' property. Count II alleged that, during construction of the roadway bed, Developers destroyed trees on the Ridgways' property, altered the natural grade of a portion of the real estate, and redirected the flow of water so as to cause erosion. The remedy sought in Count II was injunctive relief. Count III alleged that the aforementioned actions of Developers constituted a trespass to the Ridgways' realty. The remedy sought in Count III was actual damages for trespass to realty, treble damages for trespass pursuant to § 537.340, and punitive damages. *Id.* at 430. Thus, the allegations in Count III of the Ridgways' petition stated a cause of action for damages due to trespass under both common law and statutory theories of recovery.

The trial court's original judgment determined that Developers were guilty of trespass. That conclusion was based, *inter alia*, upon the following findings: (1) the Ridgways' property was subject to a roadway easement 40 feet wide; (2) the new road exceeded the boundaries of the roadway easement and encroached upon 0.7235 acres of the Ridgways' property; (3) during the construction process, Developers destroyed a number of trees on the Ridgways' property that were outside of the easement; (4) Developers' use of the cut and fill method of construction to cre-

---

**1.** All references to statutes in this opinion are to RSMo 1986, unless otherwise indicated.

ate a smoother, wider road raised the roadbed several feet above the existing terrain; and (5) this change in elevation of the new roadway allowed Developers better access to their property, but it limited the Ridgways' access to their property.

Despite these findings, the trial court denied the Ridgways' requests for ejectment and injunctive relief that would have required the encroaching portions of the roadway to be removed from their property. Furthermore, Developers were only ordered to pay the Ridgways nominal damages for trespass in the amount of one dollar because the trial court concluded that the construction of the roadway had increased the value of the Ridgways' property by twenty percent. The trial court apparently reached its conclusion by using a condemnation-like measure of damages, which offset any damages resulting from Developers' trespass by the benefit which the trial court perceived to have been conferred upon the Ridgways by the construction of the new roadway. *Id.* at 433. The Ridgways appealed from the trial court's judgment.

■ On appeal, this Court affirmed the trial court's determination that Developers had committed trespass to the Ridgways' realty.[2] *Id.* at 433–35. However, we reversed the trial court's judgment that the Ridgways were not entitled to injunctive relief and should only be awarded nominal

damages as recompense for Developers' trespass. *Id.* at 434. With respect to the latter issue, we also reviewed the applicable Missouri law concerning the proper measure of damages rules that could be applied on remand to the Ridgways' theories of recovery based on common law and statutory trespass to realty. *Id.* at 434–36. The following paragraph from our opinion defined the two purposes for which the case was remanded:

> The judgment is reversed and the cause remanded for the trial court to enter a mandatory injunction ordering the removal of the roadway and other alterations outside of the easement, allowing a reasonable time for this to be accomplished and, if necessary, a reasonable time for improvements within the easement in order that there be continued access for those wishing to go to and from the condominiums and Defendants' property. The trial court must also determine, consistent with this opinion, and take additional testimony if necessary, Plaintiffs' damages as a result of Defendants' encroachments on Plaintiffs' property.

*Id.* at 436.

### B. Proceeding on Remand

After the case was remanded, the trial court entered a mandatory injunction as ordered, and all encroaching portions of

---

**2.** The trial court's decision was supported by evidence that Developers committed trespass to the Ridgways' realty in two different ways. First, Developers directly committed trespass upon the Ridgways' realty by destroying trees, bulldozing the soil, building portions of the roadway, etc., on land outside the boundaries of the roadway easement. Second, Developers indirectly committed trespass upon the Ridgways' realty by making an unreasonable use of the roadway easement. Before the new roadway was constructed, plaintiff Robert Ridgway testified that he could access both sides of his property from the existing

gravel road, which was approximately 2600 feet long, at all points along the roadway except one location. When Developers elevated the new roadway several feet above the existing grade to create better access to their condominium project, they substantially limited the Ridgways' access to their own property. As we noted in *Ridgway I*, "[i]f the user of an easement exceeds his right, either in manner or extent of use, he is guilty of trespass and if proven, would allow for a legal remedy of damages." *Ridgway*, 26 S.W.3d at 435; *see also Smith v. Woodard*, 15 S.W.3d 768, 773 (Mo.App.2000).

the roadway were removed. On June 11, 2001, Developers filed a certification of compliance with the mandatory injunction order.

Thereafter, the parties agreed to submit the case to the trial court for a determination of damages on the existing record without taking any additional testimony. Each party also submitted legal memoranda to the trial court addressing the issue of damages. In the Ridgways' legal memorandum, they requested—for the first time during the long life span of this litigation—an award of attorney fees from Developers in the amount of $103,393.98.[3] In Developers' damages memoranda, that request was opposed on several grounds which will be discussed in more detail, *infra*.

After reconsidering the evidence in light of our opinion and reviewing the parties' legal memoranda on damages, the trial court entered a new judgment awarding actual damages and attorney fees to the Ridgways. The basis for the trial court's decision is set forth below:

> The measure of damages for real property is the difference in value of the property before and after the damage or the cost of restoration, whichever is less. All parties conceded the correct measure of damages to be the diminution of value. The diminution of value is also the measure of damages under the statutory trespass claim since the trees destroyed and the land removed to alter the terrain have no market value in their severed state. The Court finds the actual damages to be $50,000. The Court further finds that Plaintiffs are entitled to treble damages under 537.340, RSMo because the Defendants were aware of

the encroachments during the construction of the road and yet proceeded to its conclusion. The Court also awards attorney fees in the amount of $103,393.98. No punitive damages are awarded.

Developers filed a timely notice of appeal from the judgment and assert three points of error, described above, for determination in this second appeal.

## II. Standard of Review

■ In this court-tried case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) and Rule 84.13(d).[4] *Schubert v. Trailmobile Trailer, L.L.C.*, 111 S.W.3d 897, 899 (Mo.App.2003). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Pelligreen v. Wood*, 111 S.W.3d 446, 450 (Mo.App.2003).

■ At the parties' request, the trial court prepared findings of fact and conclusions of law. *See* Rule 73.01(c). In reviewing issues of fact in this case, we bear in mind that the credibility of witnesses and the weight to be given to their testimony is a matter for the trial court, which is free to believe none, part or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). Accordingly, we view the evidence and all reasonable inferences derived therefrom in a light most favorable to the judgment, and we disregard all contrary evidence and inferences. *Schubert*, 111 S.W.3d at 899; *Reardon v. Newell*, 77 S.W.3d 758, 760 (Mo.App.2002). We defer to factual findings made by the trial court because it is

---

**3.** This request was supported by an affidavit filed with the trial court by one of the Ridgways' attorneys. The affidavit authenticated billing records, which were attached to the affidavit, describing the nature and extent of the services provided to the Ridgways from July 1996 through May 2002.

**4.** All references to rules in this opinion are to the Missouri Rules of Civil Procedure (2003).

in a superior position to assess the credibility of witnesses. *Pelligreen,* 111 S.W.3d at 450; *Rathbun v. CATO Corp.,* 93 S.W.3d 771, 777 (Mo.App.2002). No such deference is afforded the trial court, however, when we review its conclusions of law. We independently evaluate whether the trial court properly declared or applied the law to the facts presented. *Schubert,* 111 S.W.3d at 899; *Rathbun,* 93 S.W.3d at 777.

## III. Analysis

 In Developers' first point relied on, they assert that the trial court erred in using the wrong measure of damages to assess the damages caused by Developers' trespass. They argue that, because the encroaching portions of the roadway were ultimately removed after remand in compliance with the trial court's mandatory injunction order, their trespass was merely temporary. Based on that premise, Developers then argue that the trial court was limited to awarding the Ridgways the diminution in the fair rental value of their property during the period of the encroachment. To support Developers' argument that this is the appropriate measure of damages, they rely on *Macios v. Hensley,* 886 S.W.2d 749 (Mo.App.1994) and *Mondelli v. Saline Sewer Co.,* 628 S.W.2d 697 (Mo.App.1982). We reject Developers' argument for two reasons.

The first reason Developers' argument lacks merit is that the measure of damages utilized in *Macios* and *Mondelli* only applies when an easement holder seeks damages for a temporary obstruction of his right of ingress and egress granted by the easement. Since that is not an issue here, these cases are factually distinguishable and thus inapposite.

In *Macios,* the trial court determined that the plaintiffs were the holders of a prescriptive easement granting them ingress and egress to a lake. Defendants obstructed plaintiffs' easement by erecting trellises and installing a chain link fence that prevented plaintiffs from using the easement to launch their pontoon boat. These obstructions, which the trial court ordered to be removed, were temporary in nature. In addition to seeking injunctive relief, plaintiffs also requested damages for the time period that their easement was obstructed by defendants. In that factual setting, the appellate court in *Macios* concluded that the proper measure of damages for temporary obstruction of an easement holder's right of ingress and egress is the reduction in the fair rental value of the property during the maintenance of the obstruction, as well as any special damages which may be established. *Macios,* 886 S.W.2d at 753.

In *Mondelli,* the plaintiff was the grantee of an easement connecting his landlocked property to a highway. During the construction of a sewer, plaintiff's right of access via the easement was temporarily obstructed. The appellate court in *Mondelli* recognized that interference with or obstruction of an easement is a nuisance. *Mondelli,* 628 S.W.2d at 699. The holder of a roadway easement has a cause of action under Missouri law to recover such damages as are proximately caused by the wrongful interference with or obstruction of the easement. *Id.* If the obstruction is temporary, the measure of damages is the reduction in the fair rental value of the property during the maintenance of the obstruction. *Id.*

 We are aware of no instance in which the measure of damages set out in either *Macios* or *Mondelli* has been applied in a case involving trespass on a servient estate (i.e., real property burdened by an easement). As we pointed out in *Ridgway I,* the proper measure of damages that applies when a party builds

a roadway outside of a clearly-defined easement was correctly set forth in the following quotation from *Smith v. Woodard*, 15 S.W.3d 768 (Mo.App.2000):

> The measure of damages to real property, where the property can be restored to its former condition, is the difference in its fair market value before and after the injury, or the cost of restoring it, whichever is less. In cases alleging trespass, it is not necessary that damage result because trespass entitles the wronged party to nominal damages. The general rule is that the measure of damages for tortious injury to real property is the difference in the fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount. This rule for measure of damages is similar to that for trespass, except with trespass no actual damage must be proven; the claimant is entitled to at least nominal damages.

(Citations omitted.) *Id.* at 773.

The second reason the Developers' argument lacks merit is that the damages caused by the trespass upon the Ridgways' property were permanent, rather than temporary, in nature. The evidence before the trial court established that in constructing the roadway, Developers committed trespass on the Ridgways' property in the following ways: (1) many trees outside of the easement were bulldozed down, hauled off and burned; (2) the bulldozing disturbed a significant area of the soil outside of the easement; (3) some of the soil from areas outside the easement was collected by Developers and moved within the portion of the property burdened by the easement as a part of the cut and fill method used to construct the roadway; (4)

due to the removal of the aforementioned trees and soil and the installation of significantly larger culverts under the new roadway to handle runoff, there has been some erosion of the Ridgways' property outside of the easement; and (5) the new roadbed was raised several feet above its original elevation, creating a steep embankment that severely limited the Ridgways' access to the portions of their property on each side of the road. None of these damages caused by Developers' trespass ended when the encroaching portions of the roadway outside the easement were removed to comply with the trial court's mandatory injunction order. In our view, these damages are permanent in nature. Thus, the factual predicate necessary to invoke the rule upon which Developers rely is absent. Point I is denied.

■ In Developers' second point relied on, they contend that the trial court erred in awarding actual damages for trespass in the amount of $50,000 and in trebling that award pursuant to § 537.340. Developers argue that the award was against the weight of the evidence and was not supported by substantial evidence in two respects: (1) the Ridgways failed to present evidence that the trees in their severed state had no substantial market value; and (2) the Ridgways failed to present evidence that Developers' removal of trees from the Ridgways' property caused the diminution in its fair market value. The genesis of this argument apparently stems from our discussion in *Ridgway I* concerning the potential measure of damages rules that the trial court could utilize on remand. These rules varied somewhat, depending on whether the trial court awarded damages to the Ridgways based on their common law or statutory theory of recovery.[5]

---

**5.** *Although the Ridgways pled both common law and statutory trespass in their petition,* they could not recover the same damages under both theories. *See Harris v. L.P. & H.*

■ If the trial court awarded damages to the Ridgways for common law trespass, the proper measure of damages would be the difference in the fair market value of their property before and after the injury or the cost of restoring the property, whichever is less (subject to the caveat that the Ridgways would be entitled to recover at least nominal damages for the trespass even if no actual damages were proven). *Ridgway*, 26 S.W.3d at 435–36. Under the common law trespass theory, the trial court also could award punitive damages (which the Ridgways had requested in their petition) if there was clear and convincing evidence that the trespass was malicious, willful, intentional or reckless. *See Hostler v. Green Park Development Co.*, 986 S.W.2d 500, 507 (Mo. App.1999); *Hyre v. Becker*, 18 S.W.2d 137, 139 (Mo.App.1929).

If the trial court awarded damages to the Ridgways for statutory trespass pursuant to § 537.340, the proper measure of damages would be determined by whether the property removed from the real estate had substantial market value in its severed state. If so, the measure of damages would be the market value of the property at the time it was removed from the land. If not, the measure of damages would be the difference in the fair market value of the real estate caused by the removal of the property from the realty. *Ridgway*, 26 S.W.3d at 435. We also noted that, if the trial court awarded damages for statutory trespass, it would have to decide whether to assess treble damages pursuant to § 537.340 or single damages pursuant to § 537.360. That decision would turn on whether Developers' had probable cause to believe that their roadway construction activities were being conducted entirely within the easement granted by the Ridgways. *Id.* at 435–36. With that

review of the damages discussion in *Ridgway I* completed, we now proceed to address Developers' argument.

■ The first prong of the argument attacks the trial court's factual finding that the trees on the Ridgways' property outside the easement, which Developers admittedly destroyed, had no market value in their severed state. The evidence demonstrated without dispute that Layne Helton, the contractor hired by Developers to construct the new roadway, bulldozed down between 100 to 150 of the Ridgways' trees that were outside the boundaries of the easement. He had these trees cut up, placed in a pile and burned. The trial court could reasonably infer that these trees had no substantial market value since they were treated like refuse and destroyed after they were severed from the realty. *See Tong v. Kincaid*, 47 S.W.3d 418, 421 (Mo.App.2001). Accordingly, the trial court's conclusion is supported by substantial evidence and is not against the weight of the evidence. *See Reardon v. Newell*, 77 S.W.3d 758, 760 (Mo.App.2002) (an appellate court must view the evidence and all reasonable inferences derived therefrom in a light most favorable to the judgment); *Rathbun v. CATO Corp.*, 93 S.W.3d 771, 784 (Mo.App. 2002) (an appellate court should exercise the power to set aside a judgment on the ground that it is against the weight of the evidence with caution and a firm belief that it was wrong).

In the second prong of Developers' argument, they assert that the trial court erred in awarding actual and treble damages because the Ridgways did not prove that the diminution in the fair market value of their real estate was caused by the removal of the trees outside the area of the easement. Because we determine that

*Constr. Co.*, 441 S.W.2d 377, 382 (Mo.App. 1969).

Developers' argument has merit, but only with respect to the trial court's action in trebling the Ridgways' damages, we review the propriety of these awards separately.

We first examine whether the trial court's award of $50,000 in actual damages was proper. The Ridgways presented the testimony of a certified real estate appraiser, David Nunn, to establish that the fair market value of their property had decreased because of the construction of the new roadway.[6] Nunn's testimony was the only evidence presented by the Ridgways on this issue. Nunn testified that the value of the Ridgways' property before construction of the new road was $184,000. After construction had concluded, the property was worth only $126,000. Nunn attributed this $58,000 decline in value to only two factors: (1) the 0.7235 acres of land taken by the roadway encroachments was worth approximately $8,000; and (2) the elevation of the roadbed by several feet steepened the terrain and reduced the Ridgways' access to their property, requiring approximately $50,000 in additional development costs to remedy.[7]

Nunn's testimony was presented prior to the first appeal, and no new evidence was adduced on remand. Since the encroaching portions of the roadway were removed prior to the retrial on damages, Nunn's testimony would, at best, support a finding that the Ridgways' property had diminished in value by $50,000. Moreover, that change in value was based entirely on the additional development costs necessary to provide the Ridgways with a reasonable level of access to their property. We find this evidence to be sufficient to support the trial court's award of damages, but only as to the Ridgways' common law trespass theory of recovery. Our conclusion is based on the difference in the rules of causation that apply to the Ridgways' common law and statutory theories of recovery.

Under the Ridgways' common law trespass theory, Developers are liable for all damages proximately caused by their trespass, regardless of whether they acted in good faith and with reasonable care, in ignorance of plaintiff's rights, or under a mistake of fact or law. *See Brand v. Mathis & Associates*, 15 S.W.3d 403, 406 (Mo.App.2000). Developers' elevation of the roadbed in such a manner as to severely restrict the Ridgways' ability to access their property constituted a trespass for which the Ridgways could recover damages. *See* footnote 2, *supra.* The testimony from appraiser Nunn provided the trial court with substantial evidence from which to conclude that the Developers' trespass caused a $50,000 diminution in value to Ridgways' property. Therefore, we affirm that part of the trial court's judgment awarding the Ridgways' $50,000 in actual damages for common law trespass.

---

6. The Ridgways were limited to the change in fair market value measure of damages because the testimony of their expert, Tom Saunders, proved that the cost of restoring the property far exceeded its market value.

7. The Ridgways' evidence concerning the $50,000 in additional development costs was presented through the testimony of Tom Saunders. Saunders was a landscape architect who was called as an expert witness by the Ridgways. Saunders testified that it would cost approximately $50,000 to provide the Ridgways with five access points (four downhill entrances and one uphill entrance) from the new roadway to their property. Without these entrances, the embankment was so high as to make the roadway nearly inaccessible from the Ridgways' property. Appraiser Nunn relied upon Saunders' figures in assessing the change in fair market value of the Ridgways' property.

■■■■■ The foregoing evidence, however, is insufficient to prove causation with respect to the Ridgways' cause of action for statutory trespass pursuant to § 537.340. Since § 537.340 is a penal statute, it must be strictly construed. *Ridgway*, 26 S.W.3d at 435; *Fondren v. Redwine*, 905 S.W.2d 156, 157 (Mo.App.1995). The version of the statute that was in effect in 1993 stated:

> If any person shall cut down, injure or destroy or carry away any tree placed or growing for use, shade or ornament, or any timber, rails or wood standing, being or growing on the land of any other person, or shall dig up, quarry or carry away any stones, ore or mineral, gravel, clay or mold, or any ice or other substance or material being a part of the realty, or any roots, fruits or plants, or cut down or carry away grass, grain, corn, flax or hemp in which he has no interest or right, standing, lying or being on land not his own, or shall knowingly break the glass or any part of it in any building not his own, the person so offending shall pay to the party injured treble the value of the things so injured, broken, destroyed or carried away, with costs.

Section 537.340. The last clause of this statute states that the offending party is required to pay the injured party "treble the value of the things so injured, broken, destroyed or carried away...." *Id.* Thus, "the statute fixes the damages at treble the value of the thing removed from plaintiff's land by the trespasser." *Cox v. St.*

*Louis, M. & S.E. Ry. Co.*, 111 Mo.App. 394, 85 S.W. 989, 992 (1905). When the thing removed from the realty has substantial market value in its own right, the measure of damages in an action for statutory trespass pursuant to § 537.340 is the market value of the property at the time it was taken from the land. *See Breiding v. Wells*, 800 S.W.2d 789, 791–92 (Mo.App. 1990).

■■■■ A narrow exception to this general measure of damages rule was adopted by this Court in *Barnes v. Arkansas–Missouri Power Co.*, 220 Mo.App. 141, 281 S.W. 93 (1926). *Barnes* "approved the use of before and after values of the real estate as a measure of damages in a § 537.340 action where the things taken, injured, or destroyed by a willful trespass have no substantial market value, when considered in their severed state." *Breiding*, 800 S.W.2d at 791. When we strictly construe the language of § 537.340, as we must, a necessary corollary of *Barnes* becomes evident: its special measure of damages rule only applies when the change in the fair market value of the realty is caused by the trespasser's severance from the realty of one or more things listed in the statute.

■■■■ Here, the only statutory items severed from the Ridgways' realty were the trees that were bulldozed down and burned. Although the trial court properly found that the destroyed trees had no substantial market value in their severed state, that finding, standing alone, would not authorize a recovery for statutory trespass based on § 537.340.[8] In order to sup-

8. Although some soil on the Ridgways' property outside of the easement was disturbed by bulldozing the trees and moved from one location to another as a part of the cut-and-fill method of constructing the road, there is no evidence that any soil was removed from the Ridgways' realty. The only direct evidence on this point came from Layne Helton, the contractor who built the road. He testified that no dirt was removed from the site during construction. A cause of action for statutory trespass pursuant to § 537.340 does not lie against a trespasser who merely digs up or otherwise injures the soil itself in the process of constructing a road. *See Ritchie v. State Board of Agriculture*, 219 Mo.App. 90, 266 S.W. 492, 495–96 (1924).

port a judgment for trespass based on this statute, there would have to be evidence that the severance of the destroyed trees from the Ridgways' realty caused the $50,000 decline in the fair market value of that real estate. No such proof was presented at trial. Accordingly, there was no substantial evidence to support a judgment for $50,000 in actual damages on the Ridgways' statutory trespass claim.

The trial court's judgment states that the damages in this case were trebled pursuant to § 537.340 because Developers "were aware of the encroachments during the construction of the road and yet proceeded to its conclusion." While such intentional conduct might have furnished a proper basis upon which to award punitive damages in this case, that issue is not before us. The trial court denied the Ridgways' request for such damages, and they have not appealed that decision. The only issue we must consider is whether the trial court's decision to treble the Ridgways' damages pursuant to § 537.340 was correct. In the absence of substantial evidence to support a recovery under the Ridgways' statutory trespass theory, we conclude that the trial court erroneously applied the law in trebling the Ridgways' $50,000 award for actual damages. *See McKinsey v. Guthrie,* 212 S.W. 563, 563 (Mo.App.1919) (when the elements necessary to prove statutory trespass are not met, treble damages may not be awarded). Therefore, Developers' second point is granted, but only as to the treble damage award.

Developers' third point relied on challenges the trial court's action in awarding the Ridgways $103,393.98 in attorney fees. Developers contend that the attorney fee award was erroneous because: (1) the Ridgways' request for attorney fees was not pled in their petition; (2) the circumstances of this case were not so unusual as to justify a departure from the American Rule that each party bears its own attorney fees; and (3) the Ridgways' request for attorney fees was barred by the doctrine of *res judicata.* Because we find the first two arguments dispositive, we do not address whether the attorney fee request was also barred by the doctrine of *res judicata.*

The Ridgways' petition did not contain any request for attorney fees in either the body of the petition or the prayer for relief. They first requested attorney fees in a memorandum outlining their request for damages after remand. In Developers' opposing memorandum on damages, they specifically objected to any award of attorney fees because such relief had not been pled. Despite that objection being raised, the Ridgways' attorneys did not seek leave to amend the petition to request such relief. "Attorney's fees are special damages which must be specifically pleaded to be recovered." *Fisher v. Fisher,* 874 S.W.2d 543, 546–47 (Mo.App.1994). *See also Conley v. Rauschenbach,* 863 S.W.2d 617, 620–21 (Mo.App.1993); *Washington University v. Royal Crown Bottling Co. of St. Louis,* 801 S.W.2d 458, 469–70 (Mo.App.1990). The trial court erroneously applied the law by awarding attorney fees to the Ridgways when their petition did not request such relief.

Reversal of the trial court's attorney fee award is required for another reason as well. The basic rules governing a party's right to recover attorney fees were recently summarized by this Court in the case of *In re Morrison,* 987 S.W.2d 475 (Mo.App.1999):

Missouri has adopted the "American Rule" which provides that litigants are to bear the expense of their own attorney's fees. Attorney's fees may be recovered, however, if the situation falls within one of the following categories:

(1) recovery pursuant to contract or provided by statute; (2) recovery as damages to a wronged party involved in collateral litigation; or (3) reimbursement ordered by a court of equity to balance benefits. The equitable balancing of benefits by awarding attorney's fees occurs only if "very unusual circumstances" can be shown. "Very unusual circumstances," as it relates to the reimbursement of attorney's fees, has been interpreted to mean an unusual type of case or unusually complicated litigation. "Balancing of benefits" under "very unusual circumstances" has been confined to very limited fact situations.

(Citations and footnote omitted.) *Id.* at 478. The Ridgways' argue that the trial court was authorized to award them attorney fees in order to balance benefits. As we noted in *Morrison,* however, this exception to the American Rule only applies if "very unusual circumstances" can be shown. *Id.* This exception is confined to very limited factual situations and requires that either the case is of an unusual type, or the litigation is unusually complicated. *Id.*

A lawsuit brought to recover damages for either common law or statutory trespass is not an unusual type of case, as is demonstrated by the significant number of appeals involving this type of litigation decided in recent years by Missouri appellate courts. *See, e.g., Tong v. Kincaid,* 47 S.W.3d 418 (Mo.App.2001); *Smith v. Woodard,* 15 S.W.3d 768 (Mo.App.2000); *Brand v. Mathis & Associates,* 15 S.W.3d

403 (Mo.App.2000); *Fondren v. Redwine,* 905 S.W.2d 156 (Mo.App.1995); *Anderson v. Howald,* 897 S.W.2d 176 (Mo.App.1995); *Breiding v. Wells,* 800 S.W.2d 789 (Mo.App.1990). There was nothing unusually complicated about this litigation. The manner in which this case was litigated by the Ridgways and Developers fails to measure up to the requirement that "the legal actions taken by the parties significantly differ from other actions taken by other parties in similar situations, or by others trying to achieve the same result." *Chapman v. Lavy,* 20 S.W.3d 610, 614 (Mo.App. 2000). Thus, we conclude that the trial court also erroneously applied the law in awarding attorney fees to the Ridgways because the very unusual circumstances necessary to justify a departure from the American Rule do not exist in this case.[9]

## IV. Disposition

We affirm that part of the trial court's judgment awarding the Ridgways $50,000 in actual damages. We reverse those parts of the trial court's judgment awarding the Ridgways an additional $100,000 as treble damages pursuant to § 537.340 and attorney fees in the amount of $103,393.98. The cause is remanded with directions that the trial court enter a judgment in favor of the Ridgways and against the Developers in the amount of $50,000, plus court costs.

PARRISH, J. and SHRUM, J., concur.

9. In so holding, we do not ignore the Ridgways' argument that an award of attorney fees was authorized because Developers intentionally committed trespass. As authority for that proposition, they rely upon *Temple Stephens Co. v. Westenhaver,* 776 S.W.2d 438 (Mo.App.1989). We find the *Temple Stephens* case distinguishable for the same reasons we articulated in *Morrison:* "[*Temple Stephens* ], however, involved a declaratory judgment action and the court specifically noted that Rule 87.09, Missouri Rules of Civil Procedure, provided that in such actions the court can award costs as may be 'equitable and just.' There is no contention, however, that Rule 87.09 applies to the instant case." *Morrison,* 987 S.W.2d at 478.