# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-3755

_____

Keller Farms, Inc.

*Plaintiff - Appellant*

v.

McGarity Flying Service, LLC; Dennis E. McGarity; Michael C. Pemberton; John Doe; John Doe Corporation

*Defendants*

Colin V. Stewart, individually and as a Partner of Joint Venturer in Stewco Farms; Brandon G. Stewart, individually and as a Partner or Joint Venturer in Stewco Farms; Faron B. Stewart, individually and as a Partner or Joint Venturer in Stewco Farms

*Defendants - Appellees*

Kenny Hulshof; Renee L. Hulshof

*Defendants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 24, 2019
Filed: December 11, 2019

_____

Before GRUENDER, ARNOLD, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Keller Farms appeals the district court's[1] directed verdict and the jury's verdict in favor of appellees the Stewarts. We affirm.

**I.**

Keller Farms operates a farm in southeast Missouri, where it grows various crops and maintains a number of both windbreak and ornamental trees. The Stewarts also operate a farm in southeast Missouri, to the north and east of Keller Farms' property. Other farms border, or are in close proximity to, Keller Farms' property.

In April and May 2015, Keller Farms, the Stewarts, and some operators of neighboring farms applied herbicides to their fields. The Stewarts hired Dennis McGarity to apply herbicides via airplane to their fields, which he did on April 23, 2015. In early May 2015, Keller Farms first detected herbicidal damage to some of its crops. Around this time, Keller Farms also noticed damage to some of its trees.

Keller Farms suspected that herbicide drift caused this damage and submitted a complaint to the Missouri Department of Agriculture ("Department"), which assigned Yvonne Barr to investigate the matter. Based on Barr's investigation, the Department issued a warning letter to McGarity in February 2016, finding that it was more likely than not that chemicals he applied to the Stewarts' field had drifted onto Keller Farms' property. Although Missouri law empowers the Director of the Department to order restitution in such circumstances, *see* Mo. Rev. Stat. § 281.060.2, the Department opted only to issue McGarity this warning letter.

Keller Farms subsequently sued McGarity and Michael Pemberton (who applied herbicides to a different field farmed by the Hulshofs around the same time

---

[1]The Honorable Abbie Crites-Leoni, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

McGarity applied herbicides to the Stewarts' field), alleging negligence, negligence *per se*, and statutory trespass under Missouri law for applying herbicides in a manner that allowed them to drift onto Keller Farms' property and cause damage to its crops and trees. Keller Farms later amended its complaint to add the Stewarts and the Hulshofs to hold them vicariously liable for the herbicide drift. The district court dismissed Pemberton from the action after he went bankrupt and dismissed McGarity and the Hulshofs after Keller Farms settled with them. The action thus proceeded against the Stewarts alone.

In a pretrial order, the district court limited Keller Farms' statutory trespass count to tree damage, concluding that Keller Farms could not recover for crop damage under the plain language of the statute. In a pretrial conference, the district court also excluded two sets of evidence Keller Farms proffered: (1) the February 2016 warning letter issued to McGarity by the Department as well as testimony regarding the findings and conclusions in the letter from Darryl Slade, who was at that time the Enforcement Program Coordinator for the Department; and (2) two warning letters the Department issued to McGarity regarding other instances where it found he likely caused herbicide drift. During trial but before submitting the case to the jury, the district court directed a verdict for the Stewarts on the statutory trespass claim because Keller Farms failed to present sufficient evidence of tree damage. The district court allowed the negligence and negligence *per se* claims to go to the jury, which returned a verdict in favor of the Stewarts on both counts.

The district court then entered final judgment in favor of the Stewarts on all counts. Keller Farms moved for a new trial, challenging the district court's directed verdict on the statutory trespass count, its exclusion of evidence, and the jury's verdict on the negligence and negligence *per se* counts. The district court denied the motion. Keller Farms appeals.

## II.

This is a diversity case arising out of Missouri. As such, "we apply state substantive law and federal procedural law." *Barkley, Inc. v. Gabriel Bros., Inc.*, 829 F.3d 1030, 1038 (8th Cir. 2016).

## A.

Keller Farms asserts that the district court erred in two ways in directing a verdict against it on its statutory trespass count. We review *de novo* both a district court's grant of judgment as a matter of law and a district court's interpretation of state law. *Wurster v. Plastics Grp., Inc.*, 917 F.3d 608, 617 (8th Cir. 2019); *Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 831 (8th Cir. 2019).

First, Keller Farms argues that the district court read the Missouri trespass statute in an "overly-technical" manner to exclude Keller Farms' claim for crop damage. The statute under which Keller Farms brought this trespass claim provides:

> If any person shall cut down, injure or destroy or carry away any tree placed or growing for use, shade or ornament . . . or shall dig up, quarry or carry away . . . any roots, fruits or plants, or cut down or carry away grass, grain, corn, flax or hemp in which such person has no interest or right . . . the person so offending shall pay to the party injured treble the value of the things so injured, broken, destroyed or carried away, with costs.

Mo. Rev. Stat. § 537.340.1. The district court reasoned that only Keller Farms' claim for tree damage was actionable under the statute because it makes "injury" to trees compensable but requires crops to be dug up, cut down, or carried away, which did not take place in this case. The district court was correct.

In Missouri, when a statute is unambiguous, "[t]here is no room for construction," and "[c]ourts are without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language." *Kearney Special*

*Road Dist. v. Cty. of Clay*, 863 S.W.2d 841, 842 (Mo. 1993). Here, the statute permits an action against a person who "injure[s]" another's trees but only permits an action against a person who "dig[s] up," "carr[ies] away," or "cut[s] down" another's "plants" such as "grass" or "grain." Mo. Rev. Stat. § 537.340.1. The "express mention" of injury with respect to trees "coupled with [the] obvious omission" of injury with respect to crops indicates that only injury to trees is actionable under the statute. *Cf. Mo. Chamber of Commerce & Indus. v. Mo. Ethics Comm'n*, 581 S.W.3d 89, 94 (Mo. Ct. App. 2019). Keller Farms does not allege McGarity dug up, carried away, or cut down its crops, but merely that he injured them, so its claim for crop damage is not actionable under this statute.

This reading of section 537.340 is supported by the terms of a related Missouri statute. *See Disalvo Props., LLC v. Bluff View Commercial, LLC*, 464 S.W.3d 243, 246 (Mo. Ct. App. 2015) ("[W]hen engaging in statutory interpretation, it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed . . . ." (internal quotation marks omitted)). Section 537.353.1 expressly imposes liability on one who "*damages* . . . any field crop product . . . grown for . . . commercial purposes." Mo. Rev. Stat. § 537.353.1 (emphasis added). This provision indicates that "[t]he legislature knew how" to impose liability for generally injuring crops and "did so" in section 537.353 but did not do so in section 537.340. *Cf. State ex rel. Jones v. Eighmy*, 572 S.W.3d 503, 507 n.4 (Mo. 2019). Keller Farms was the master of its complaint and chose to proceed under only section 537.340. That choice limited it to pursuing only its tree-damage claim under the trespass statute.

Second, Keller Farms argues that it proffered sufficient evidence to make a submissible case for its statutory trespass claim concerning damage to its windbreak and ornamental trees. We disagree.

In Missouri, the measure of damages under section 537.340 for injury to trees that "have no substantial market value" if cut down—such as "trees used for a windbreak, and ornamental or shade trees"—is the diminution in value of the

underlying real estate caused by the injury.  *Barnes v. Ark.-Mo. Power Co.*, 281 S.W. 93, 95-96 (Mo. Ct. App. 1926); *accord Ridgway v. TTnT Dev. Corp.*, 126 S.W.3d 807, 815 (Mo. Ct. App. 2004); *Brand v. Mathis & Assocs.*, 15 S.W.3d 403, 406 (Mo. Ct. App. 2000).

That being said, in *Tong v. Kincaid*, the Missouri Court of Appeals suggested the measure of damages under section 537.340 was not diminution in value alone but rather the lesser of "the cost of restoring the property" and "the difference in fair market value" of the property "before and after the injury."  47 S.W.3d 418, 421 (Mo. Ct. App. 2001).  But then in *Ridgway*, that same court noted that the "rules" regarding "the potential measure of damage" "varied somewhat" depending on whether recovery was sought under a common-law or statutory trespass theory.  126 S.W.3d at 814; *see Ridgway v. TTnT Dev. Corp.*, 26 S.W.3d 428, 435-46 (Mo. Ct. App. 2000) (recognizing that "[a] cause of action brought under [section 537.340] differs from a cause of action brought under common law trespass").  The *Ridgway* court then clarified that the *Tong* alternative applied in "common law trespass" cases, but "the measure of damages" under section 537.340 remained "the difference in the fair market value of the real estate" resulting from the tree damage in cases involving trees without substantial market value.  126 S.W.3d at 815.  As *Ridgway* is more recent than *Tong*, it controls here.  *See Yoder v. Nu-Enamel Corp.*, 117 F.2d 488, 490 (8th Cir. 1941) ("Where co-ordinate decisions of a state court are conflicting, the most recent pronouncement must be accepted by the federal court as declaring the law of the state.").

Keller Farms argues that it produced evidence showing that its trees "had no value in their hypothetical severed state."  We accept this claim for purposes of this appeal.  *See Barnes*, 281 S.W. at 95 (noting that the diminution-in-value measure of damages "has been applied" in cases involving "windbreak" trees as well as "ornamental or shade trees").  Thus, Keller Farms had to proffer evidence of the fair market value of its real estate "immediately before and after the trespass" to establish its damages.  *Id.* at 96.  The only "before" evidence proffered at trial was Keller Farms' purchase price of approximately $2,500,000 when it bought the land roughly a decade ago.  The only "after" evidence proffered at trial was an appraisal done in

2018, valuing the land at over $7,000,000. Even if these assessments had occurred "immediately" before and after the alleged trespass, they do not show a diminution in value because of tree damage. Keller Farms therefore had insufficient evidence of damages, barring recovery under the trespass statute.

Keller Farms nevertheless argues that section 537.340 "provides for recovery of 'the value of the things so injured' as the measure of damages" rather than the diminution-in-value measure. But the *Barnes* court rejected this exact argument, holding that "notwithstanding the use of the word 'thing' in the statute," the measure of damages for injury to trees without substantial market value in a case brought under section 537.340 "is the difference in value of the premises immediately before and after the trespass." 281 S.W. at 95-96.

Keller Farms also argues that "replacement cost" is the appropriate measure of damages for injury to its windbreak trees because damages to those trees were "relatively insignificant compared to the overall value of the property" and Missouri caselaw suggests "replacement cost" is the proper measure of damages in such circumstances. But none of the authorities cited by Keller Farms for this proposition involve a claim for tree damage under the trespass statute. These cases do acknowledge, however, that "[t]he particular facts and circumstances of each case dictate" the applicable measure of damages. *Dubinsky v. U.S. Elevator Corp.*, 22 S.W.3d 747, 751 (Mo. Ct. App. 2000). In cases involving claims under section 537.340 for damage to windbreak or ornamental trees, Missouri courts have instructed that the applicable measure of damages "must be distinguished" from the measure of damages applicable in other situations. *See Beaty v. N.W. Elec. Power Coop., Inc.*, 312 S.W.2d 369, 371 (Mo. Ct. App. 1958); *see, e.g.*, *Ridgway*, 126 S.W.3d at 815. The authorities on which Keller Farms relies are thus inapposite.

Additionally, Keller Farms argues that the "trunk formula method"—a method its expert used to determine "the value of each tree" in order to come up with a damages figure—provides the proper measure of damages for injury to its ornamental trees. As it admits, however, "no Missouri court has specifically authorized the use of this method of computing damage to ornamental trees . . . ."

For good reason, it seems: cases discussing the trunk formula method suggest it is a different measure of damages than the diminution-in-value measure Missouri courts apply in this context. *See Rover Pipeline, LLC v. 1.23 Acres of Land*, C.A. No. 17-cv-10365, 2018 WL 3322995, at \*6 (E.D. Mich. July 6, 2018) (noting that "the trunk formula method . . . values each tree distinctly from the land on which it is situated"). In *United States v. 0.648 Acres of Land*, for instance, the district court excluded an expert report providing a tree-damage figure based on the trunk formula method after it concluded that "the exclusive method of valuation" under governing law in that case was the diminution-in-value method. C.A. No. 13-4722, 2014 WL 2533778, at \*2, \*4 (E.D. La. June 5, 2014).

Similarly here, "the difference in the fair market value of the real estate" is the exclusive measure of damages involving injury to trees on that real estate that do not have substantial market value on their own. *Ridgway*, 126 S.W.3d at 815; *see Doty v. Quincy, Omaha & Kansas City R.R. Co.*, 116 S.W. 1126, 1128 (Mo. Ct. App. 1909) ("Recoverable damages for the injury to them consists alone of the effect such injury had on the market value of the land . . . ."). No Missouri court has endorsed use of the trunk formula method in this context, and we decline to find that the Missouri Supreme Court would do so given *Barnes*' specificity as well as its authoritative status in modern Missouri case law on the question of the proper measure of damages under section 537.340 for injury to windbreak and ornamental trees. *See, e.g.*, *Ridgway*, 126 S.W.3d at 817 (discussing *Barnes*).

B.

Keller Farms also takes issue with the district court's exclusion of two different sets of evidence: (1) the Department's February 2016 warning letter to McGarity and Slade's testimony about the conclusions in that letter; and (2) two other warning letters issued to McGarity finding him likely responsible for herbicide drift in other incidents. Whether evidence is admissible is a question of federal law, *Clark v. Martinez*, 295 F.3d 809, 813 n.4 (8th Cir. 2002), and we review the district court's evidentiary rulings for abuse of discretion, *Townsend v. Bayer Corp.*, 774 F.3d 446, 460 (8th Cir. 2014).

The district court excluded the February 2016 warning letter as well as Slade's testimony about it under Federal Rule of Evidence 403 after finding that this evidence "would be unfairly prejudicial because it would suggest to the jury that an official fact-finding body had already decided whether McGarity" was responsible for Keller Farms' damages, thereby invading the province of the jury. This decision was not an abuse of discretion.

With respect to expert testimony regarding ultimate issues of fact, we have warned that "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering" on its own based on the other evidence available. *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998) (internal quotation marks and brackets omitted). Here, the district court still permitted Keller Farms to elicit testimony from Barr, the individual "who actually conducted the investigation" for the Department. It also allowed Keller Farms' expert to testify that there was "no doubt in [his] mind" that "chemicals sprayed by Mr. McGarity on April 23rd did, in fact, migrate to Keller Farms," causing damage. It excluded Slade's testimony because that testimony went to "the ultimate issue of this case" and represented "the conclusion of the Department of Agriculture," whose imprimatur threatened to overwhelm the jury's ability to make an independent determination on this ultimate issue. The district court guarded against invading the province of the jury, and it did not abuse its discretion in doing so.

The same is true of its decision to exclude the February 2016 warning letter. Generally, the admissibility of "administrative findings" of this sort is "left to the sound discretion of the trial court." *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984). A district court does not abuse its discretion in excluding such evidence where such findings have "little probative value" due to their "conclusory" nature and "substantial evidence" concerning the "matters summarized in the report" is otherwise presented to the jury. *Id.* at 1309-10. This was precisely the case here. The February 2016 warning letter was a conclusory two-page document, and Keller Farms proffered evidence from "numerous other witnesses" testifying in support of its contention that McGarity's herbicide application drifted onto Keller Farms' land. The district court exercised "sound discretion" in

excluding this letter, which we "decline to disturb." *See Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 427 (8th Cir. 2017).

The district court excluded the other two warning letters under Rule 403 after finding that the "probative value" of these two letters was "substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury." The district court also noted that Keller Farms would "be able to question Mr. McGarity about what sort of precautions he takes when performing aerial spraying of herbicides." The district court did not abuse its discretion in excluding these letters.

Generally, "[e]vidence of a . . . wrong . . . is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Keller Farms argues that this evidence should have been admitted to establish whether McGarity applied the herbicides "in such a way as to allow them to drift onto the Keller Farms property." That is, Keller Farms proffered this evidence to show that McGarity acted in accordance with his purportedly negligent character when he crop dusted the Stewarts' field. Rule 404 prohibits this.

To avoid Rule 404's prohibition of propensity evidence, Keller Farms argues that this evidence should have been admitted because it had "another purpose," Fed. R. Evid. 404(b)(2), namely, to show that McGarity had "notice of a dangerous condition," *see Hicks v. Six Flags over Mid-America*, 821 F.2d 1311, 1316 (8th Cir. 1987). But McGarity's awareness that spraying herbicides from an airplane could create a dangerous condition was not "at issue in the case." *See Weitz Co. LLC v. MacKenzie House, LLC*, 665 F.3d 970, 975 (8th Cir. 2012). On the contrary, McGarity volunteered that he knew Keller Farms' property was close by, that he had an obligation to act as "a reasonably careful and prudent aerial applicator would act," that if he caused any herbicide to drift onto Keller Farms' property he would have violated the law, and that he was aware of the risks of spraying herbicides in high wind and took significant precautions to gauge wind before spraying. As

McGarity's awareness of a dangerous condition was not at issue, these other letters were not admissible for "another purpose." *See id.*

## C.

Finally, Keller Farms argues that the district court should have set aside the verdict and granted Keller Farms' motion for a new trial both because the jury's verdict was against the weight of the evidence and because the Stewarts made an improper closing argument resulting in jury nullification. We review the denial of a motion for a new trial for an abuse of discretion, bearing in mind that such motions "are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." *United States v. Petroske*, 928 F.3d 767, 774 (8th Cir. 2019).

First, the district court did not abuse its discretion in denying the motion for a new trial on the ground that the verdict was against the weight of the evidence. "Where the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal," *Keenan v. Computer Assocs. Int'l, Inc.*, 13 F.3d 1266, 1269 (8th Cir. 1994) (internal quotation marks omitted), and we review "the evidence most favorably to the verdict," *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2008). Here, the jury heard sufficient evidence to warrant its verdict. For example, Barr testified that she "didn't see a drift pattern" on Keller Farms' property from the direction of the Stewarts' field, noting instead that she saw "drift from the south," the opposite direction, suggesting an alternate cause of Keller Farms' damages. McGarity testified that he noticed herbicide damage in the area while in the air the day he applied herbicides to the Stewarts' field, further suggesting an alternate cause of damages. The jury also heard the Stewarts' expert explain why he thought it was basically impossible for the herbicides McGarity sprayed to drift onto Keller Farms' property. It was for the jury to weigh the evidence and assess credibility, and Keller Farms cannot meet its burden here merely by showing that "the jury could have drawn different inferences or conclusions" from the evidence

and testimony. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 186 (8th Cir. 1972) (internal quotation marks omitted).

Second, the district court did not abuse its discretion in denying the motion for a new trial on the ground that the Stewarts' closing argument was improper. "[W]hen a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are plainly unwarranted and clearly injurious and cause prejudice to the opposing party and unfairly influence a jury's verdict." *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351 (8th Cir. 2002) (internal quotation marks omitted) (brackets omitted). Even if closing arguments are prejudicial, a "district court's cautionary instructions [can] cure[] any prejudice that might have been caused by the comment," *id.* at 353, as may counsel's chance to respond to them, *see, e.g.*, *Gilster v. Primebank*, 747 F.3d 1007, 1011 (8th Cir. 2014) (considering counsel's "opportunity to respond" to opposing counsel's improper closing argument as a factor in deciding whether such argument was sufficiently prejudicial to warrant new trial).

Keller Farms takes issue with comments made by the Stewarts' counsel in closing argument that Keller Farms argues suggested to the jury that it should disregard the law and render a verdict for the Stewarts out of sympathy. But, even assuming Keller Farms' characterization of these comments is correct, any prejudice Keller Farms ostensibly suffered was cured by the district court's instructions and Keller Farms' closing argument. The district court instructed the jury at the start of trial that attorneys' statements and closing arguments were not evidence and that the jury could not let its judgment be affected by sympathy, and the district court reminded the jury before closing arguments that these instructions were still in effect. Keller Farms then had a chance to rebut the Stewarts' closing argument, reminding the jury that it had to follow the law and could not be swayed by sympathy. The district court's admonition to the jury "at the beginning of trial . . . that statements made by the attorneys are not evidence," coupled with Keller Farms' rejoinder to the Stewarts' closing argument, "remedied any prejudice incurred" by Keller Farms. *See Billingsley v. City of Omaha*, 277 F.3d 990, 997 (8th Cir. 2002).

## III.

We affirm the district court's entry of judgment in favor of the Stewarts on all counts in Keller Farms' amended complaint, and we affirm its denial of Keller Farms' motion for a new trial.

_____