# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-1783

_____

Mahaska Bottling Company, Inc.; Pepsi-Cola Bottling Company of Salina, Inc.;
Pepsi-Cola Bottling Company of Norfolk, Inc.

*Plaintiffs - Appellees*

v.

Bottling Group, LLC

*Defendant*

Pepsico, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: April 15, 2021
Filed: July 28, 2021

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Bottling Group, LLC and PepsiCo, Inc. (collectively, "Pepsi") had a long-standing business relationship with independent bottling companies Mahaska Bottling Company, Inc.; Pepsi-Cola Bottling Company of Salina, Inc.; and Pepsi-Cola Bottling Company of Norfolk, Inc. (collectively, "Mahaska"). Decades ago, Pepsi granted Mahaska exclusive rights to distribute bottles and cans of certain Pepsi products in identified territories. Pepsi also granted Mahaska limited rights to distribute fountain syrup products in identified territories. Disputes arose out of the agreements, giving rise to the claims and counterclaims in this case.

After a 12-day trial, the jury returned a split verdict. It awarded Mahaska a total of $2,956,540.10 in damages and Pepsi a total of $24,000 in damages. Pepsi filed a motion for a new trial asserting a number of claims, including that Mahaska's closing arguments were improper and prejudicial. The district court[1] denied Pepsi's motion. Pepsi appeals only the closing argument issue, and we affirm.

Each jury trial has a unique character that is heavily impacted by the personalities and style of the major actors in the trial: the lawyers, the parties, and the judge. Sometimes the trial reflects an aggressiveness and hurly-burly that walks right up to the line of impropriety but does not cross it. This is such a case. The case was tried by both parties in a contentious manner. Neither party was receptive to the efforts of an experienced, competent, and capable trial judge to lower the heat. The jury awarded damages to both sides, reflecting a likelihood that the jurors considered all of the evidence and were not moved by prejudice to punish either party based on the conduct during the trial. Other than this general overview, a detailed analysis of the specific background of this case is unnecessary to understand the closing argument issue presented on appeal, so we begin with the legal analysis.

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

We review a district court's denial of a new trial motion for an abuse of discretion. Keller Farms, Inc. v. McGarity Flying Serv., LLC, 944 F.3d 975, 984 (8th Cir. 2019). To be entitled to a new trial based on an improper closing argument, a party must show that the closing argument was "plainly unwarranted and clearly injurious." Id. at 984–85 (citation omitted). If the allegedly improper statements were not objected to, our review of those statements is for plain error. Lawrey v. Good Samaritan Hosp., 751 F.3d 947, 954 (8th Cir. 2014). To find plain error, we must find, at a minimum, an error that affected a party's substantial rights and seriously affected the fairness and integrity of the trial. See Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 835 (8th Cir. 2005) (citing Wiser v. Wayne Farms, 411 F. 3d 923, 927 (8th Cir. 2005)).

Pepsi challenges a number of statements made by Mahaska's counsel during closing argument. Prior to the commencement of closing arguments, Pepsi objected to portions of a PowerPoint that Mahaska had prepared for closing argument. These objections may encompass a few of the more than 80 improper statements Pepsi alleges occurred during closing argument. Despite Pepsi's belief of pervasive impropriety, Pepsi took a "wait and see" approach. Pepsi neither objected or requested a sidebar during any portion of Mahaska's closing argument, nor did it object after argument and before the final charge to the jury, depriving the court of an opportunity to give any appropriate curative instructions. The first time the district court learned of Pepsi's claim was weeks after the trial ended in its motion for a new trial.

For ease of discussion, we will group Pepsi's claimed improper statements into a five categories: (1) statements regarding Mahaska's survival; (2) statements referencing Pepsi's size; (3) statements allegedly encouraging local bias; (4) statements denigrating Pepsi's defenses and counterclaims and its witnesses' credibility; and (5) statements related to punishment, sending signals, or malice.

Because of the failure to object during trial, most claims are subject to plain error review.

As to the statements having to do with Mahaska's survival, we assume Pepsi's objection to certain slides in Mahaska's PowerPoint have preserved review of this issue. After closely reviewing the comments in context, we find no plainly unwarranted and clearly injurious statements. Mahaska brought a claim for tortious interference, which required it to show that Pepsi's interference was done with the predominant purpose of financially harming or destroying Mahaska's business. Because one of the issues before the jury was whether Pepsi acted with the intent to destroy or harm Mahaska's business, argument about Mahaska's survival was neither irrelevant nor "plainly unwarranted."

In addition, Mahaska defended one of its contract claims by arguing that Pepsi's competing interpretation of the contract made no sense in light of the "price squeeze" it would create (leaving Mahaska extremely vulnerable and with no control over either the price of its most expensive input or the price at which it sold its products). Calling attention to a problem with a competing interpretation of a contract is permissible argument when a jury is called to interpret the contract as part of its fact-finding process. While the evidence supporting Mahaska's survival argument may not have been strong, the evidence was before the jury and it went to an element of a claim or defense. On this trial record, allowing Mahaska to argue about its survival was not improper, unsupported, or unwarranted.

As to the second category of statements regarding Pepsi's size and revenue, we again assume that Pepsi preserved review of these statements by objecting to one of Mahaska's PowerPoint slides, which referred to Dollar General as Pepsi's billion-dollar customer. Nonetheless, we do not find the slide or commentary about the slide plainly unwarranted and clearly injurious. The language in Mahaska's slide was taken directly from evidence that Pepsi offered and was admitted during the trial.

When commenting on the slide during closing argument, Mahaska's counsel noted that Pepsi believed Dollar General was worth a billion dollars per year. Counsel pointed out that, during trial, Pepsi's witness had tried to minimize the billion-dollar figure when the witness claimed that, while Dollar General sold a billion dollars worth of Pepsi products, that was not the revenue or profit that Pepsi itself realized. Regardless of whether this was permissible argument about how to interpret Pepsi's slide, Mahaska's counsel did not improperly characterize Pepsi's witness's testimony about the slide. Importantly, Pepsi had an opportunity to respond (and it did, reminding the jury that the billion-dollar figure referenced Dollar General's revenue, not Pepsi's profits). In light of the entirety of the parties' arguments to the jury, there was nothing plainly unwarranted and clearly injurious about Mahaska's counsel's argument. Keller Farms, Inc., 944 F.3d at 985 (opposing counsel's opportunity to respond to improper closing argument was a factor that remedied potential prejudice from a closing argument).[2]

We turn to the third category of statements, which are those purportedly encouraging local bias. Pepsi alleges that Mahaska's reference to Pepsi's New York

---

[2]Mahaska's counsel also referred to Pepsi as "one of the largest corporations in the world" and a "10,000 pound gorilla." These statements were never objected to and thus only warrant a new trial if they affected Pepsi's substantial rights and seriously affected the fairness and integrity of the trial. This is a difficult burden to meet when the jurors likely already knew Pepsi was one of the largest corporations in the world. See, e.g., Kehm v. Procter & Gamble Mfg. Co., 724 F.2d 613, 623 (8th Cir. 1983) (admission of financial information not prejudicial when it was "highly probable that the members of the jury were already aware of the disparities in wealth between the parties"). And although the "10,000 pound gorilla" comment is not a favored practice, the jury was instructed that statements by counsel during closing arguments are not evidence and that they should return a verdict free of sympathy or preferences. See Keller Farms, Inc., 944 F.3d at 985 (admonition to jury that it must not be affected by sympathy remedied any prejudice incurred); Billingsley v. City of Omaha, 277 F.3d 990, 997 (8th Cir. 2002) (admonition to jury that statements made by the attorneys are not evidence remedied any prejudice).

office improperly appealed to local biases. Specifically, Mahaska's counsel stated that Pepsi's claims "may have sounded good in [its] New York office." This statement was not objected to and does not rise to plain error. Indeed, this fleeting reference was innocuous in the context of this trial, where Pepsi's own witnesses had repeatedly referenced decisions being made in the New York office, and witnesses identified locations all over the country when asked where they previously lived, were living, or where they currently worked. Notably, Pepsi's counsel questioned Mahaska's CEO about the significant time the CEO spent in New York before taking a job with Mahaska in Texas. Given Pepsi's own repeated references throughout the trial to its New York headquarters, and the emphasis Pepsi placed on Mahaska's CEO's out-of-state connections, Mahaska's single passing reference in closing argument to Pepsi's New York office was not improper or prejudicial.[3]

With regard to the fourth category of statements, pertaining to allegedly denigrating statements about Pepsi's defenses, counterclaims, and its witnesses' credibility, Pepsi asserts that Mahaska attacked Pepsi's right to defend itself and vouched for the credibility of witnesses. Pepsi never objected to any of these statements, and we find no plain error.[4] Mahaska did not attack Pepsi's right to defend itself, but rather pointed out reasons to disbelieve Pepsi's theories. For

---

[3]Although Pepsi also argues that Mahaska's counsel gestured to Mahaska employees and their families who were assembled at the back of the courtroom during closing argument, Pepsi made no record of this alleged gesture or courtroom packing before the district court. This issue has not been preserved for our review.

[4]Assuming Pepsi preserved an objection to Mahaska's arguments about Pepsi's expert witness's pay ($950/hour) and her purported ineffective testimony related to what an average is and how it is calculated, Pepsi's expert's pay was relevant evidence. See Balsley v. LFP, Inc., 691 F.3d 747, 763 (6th Cir. 2012) (fact that the defense paid an expert was relevant to the expert's credibility). In addition, Mahaska's characterization of the expert's testimony was permissible argument based on her testimony.

example, Mahaska's counsel asked the jury to consider that, for 13 years, Pepsi acted mostly consistently with Mahaska's interpretation of the contracts. Even so, Pepsi filed counterclaims against Mahaska alleging that Mahaska's interpretation of the contracts was incorrect. Mahaska's counsel noted the change in interpretation, coming as it did hard on the heels of Mahaska's suit against Pepsi, was worthy of consideration. Such a comment, which draws an inference from evidence admitted at trial, is not improper. See Lawrey, 751 F.3d at 954 ("It is not improper . . . for an attorney to tell the jury his opponent's argument is false or disingenuous if such statements are consistent with the facts developed at trial.").

Finally, as to the last category of the statements that allegedly encouraged the jury to "punish" or "send a signal" to Pepsi for behaving "maliciously," Pepsi never objected to these statements and never requested a curative instruction. Under these circumstances, the statements can only warrant a new trial if they seriously affected the fairness and integrity of the trial. That high burden is not met here. While Pepsi has cherry-picked phrases from Mahaska's closing argument to allege that Mahaska encouraged the jury to send a signal with its verdict and punish Pepsi for acting with malice, a closer reading in context reveals something different. Mahaska's statements were much more closely tied to the circumstances and evidence in this case than Pepsi acknowledges. For example, Mahaska's counsel did not broadly ask the jury to send a signal to Pepsi. Counsel instead argued the jury's decision will send a signal in the sense that it will either (a) be the start of fair treatment for Mahaska and require Pepsi to abide by the contractual terms, or (b) probably be the beginning of the end of Mahaska. In context, Mahaska was not seeking broad punishment but arguing about Mahaska's treatment under the very contracts at issue in the litigation. The same is true with Mahaska's single offhand mention of "malice." Mahaska's attorney proclaimed that Pepsi's conduct "shows malice . . . shows tortious interference . . . shows breach of contract." We agree that using the term "malice" was inadvisable given its legal relevance to punitive damages, which were not at issue at trial. Even so, Mahaska was required to show that Pepsi's tortious interference was done with

-7-

the predominant purpose of financially harming or destroying Mahaska's business. Use of "malice," as understood by a reasonable juror in the ordinary sense of the word as embracing concepts of ill will or hostility, was arguably directed at the tortious interference claim that was before the jury.

While Mahaska apparently wanted to send a message to Pepsi, counsel directed this argument to the damages Mahaska sustained because of Pepsi's conduct. No argument was advanced for non-compensatory damages. On this record, we find Pepsi's substantial rights were not affected in a manner that seriously affected the fairness and integrity of the trial. See Lawrey, 751 F.3d at 954 (argument that the "medical community is going to be listening to your verdict" did not result in a miscarriage of justice where (1) "the comment was made in the context of asking the jury to determine the appropriate community standard of care," (2) it "comprised a very small portion of a lengthy closing argument," and (3) "[t]he district court instructed the jury that statements by the attorneys were not evidence and the case should be decided based upon the facts presented at trial").

Portions of Mahaska's closing argument were hyperbolic. Other portions perhaps approached the line for permissible argument. But, Pepsi's failure to object during or after the closing argument is some indication that the multitude of statements deemed improper weeks after the jury returned its verdict were not viewed by Pepsi's counsel as prejudicial or improper when they were made in context before the jury. In addition, upon our review of the record, the statements raised by Pepsi on appeal were based on evidence presented during trial or reasonable inferences that could be drawn from the evidence. We conclude that the comments Pepsi now challenges, either alone or together, did not so infect the trial with the type of impropriety that would make a new trial appropriate.

For the foregoing reasons, we affirm the judgment of the district court.

_____